**Donald BOUGÉ, Plaintiff,**

v.

**SMITH'S MANAGEMENT CORP., Defendant.**

**No. 89–C–1066 S.**

United States District Court, D. Utah, C.D.

Oct. 5, 1990.

Robert H. Wilde, Midvale, Utah, for plaintiff.

Jack L. Schoenhals, Salt Lake City, Utah, for defendant.

### MEMORANDUM DECISION AND ORDER

RONALD N. BOYCE, United States Magistrate.

The plaintiff, Donald Bougé, filed the instant action against Smith's Management Corporation claiming the defendant, a large grocery chain operator, violated the Fair Labor Standards Act, 29 U.S.C. § 201 et seq. Plaintiff alleged he was not compensated for overtime work and that some of the time that plaintiff worked was uncompensated. Plaintiff has also joined a claim for wrongful termination. An answer denying liability was filed and the case referred to the magistrate under 28 U.S.C. § 636(b)(1)(B). The parties, thereafter, engaged in discovery which has resulted in several disputes, most of which counsel have earnestly sought to resolve among the parties. See Rule 9(h) *Rules of Civil Practice, United States District Court for District of Utah.*

The plaintiff filed a petition for an order to show cause for defendant and its agent to appear and show why they should not be prevented from prohibiting the defendants' employees from speaking to plaintiff and plaintiff's counsel and investigators.[1] The plaintiff filed a memorandum in support of the request for protective relief. Plaintiff contended in his memorandum, and in his

---

1. The matter has been referred to the magistrate as a request for a protective order.

oral argument before the magistrate, that he only wished to interview non-management employees. It appears the subjects of the interview would be lower level grocery store employees of defendant, who had charge of various departments of one of the defendant's large supermarkets in St. George, Utah. Such employees are non-management and non-policy making employees. Defendant has not authorized the employees to speak in its behalf or to make binding admissions on its behalf. The plaintiff's motion for protective relief was supported by his own affidavit to the effect that employees of defendant's store had been told not to speak to the plaintiff.[2] Plaintiff contends he has a right to interview potential witnesses and persons who may have information relevant to his claim.

In response, defendant filed a motion to prohibit plaintiff's counsel and agents from interrogating employees of the defendant or to restrict the use of confirmation letters or recorded transcripts. Defendant contends that plaintiff's counsel has caused and will cause employees of the defendant to be interrogated outside the presence of the defendant's counsel, that interviews are sometimes tape recorded, and thereafter, following the interview, letters of confirmation are sent to the employee specifying the information provided. At hearing, defendant's counsel protested that employees are often unaware of the consequences of their statements and the possible use to which such statements could be put at trial. On the other hand, the technique used by plaintiff is a means of obtaining impeachment evidence or avoiding defendant or its employee from changing evidence or the nature of testimony at the time of trial.

The defendant places reliance on ABA Code of Professional Responsibility DR–7–104(A)(1)[3] restricting an attorney from contacting another party who is represented by counsel (Pl. memo, File Entry # 25, p. 5). The plaintiff cites ethical opinions from the *San Diego Bar Association Ethics Committee, Opinion 1984–5,* (November 5, 1984), the *New York County Lawyer's Association,* Opinion 528 and others, that a plaintiff's attorney may not communicate "directly with employees of a defendant corporation whether or not they are in managerial positions ...". (Pl. memo. Id. p. 6). The defendant did not submit copies of these opinions, however, the defendant's position is obviously that the ethical rule is a restriction on discovery in this case and that it applies to any employee. The defendant's contention would have the effect of preventing a plaintiff from contacting any of the corporate defendant's employees after the litigation commenced, no matter how trivial the employees's status. The effect would require a plaintiff to employ expensive deposition or other formal discovery. The cost of this process may be prohibitive and contrary to efforts to reduce the costs which the burden of formal discovery places on litigants, counsel and the courts. Oberer, *Trial by Ambush or Avalanche, The Discovery Debacle,* 1987 Missouri Jnl. of Dispute Resolution 1; Wolfson, *Addressing the Adversarial Dilemma of Civil Discovery,* 36 Cleveland St. L.Rev. 17 (1987). In this case, the plaintiff's monetary claim for violation of the Fair Labor Standards Act is $39,997.80 plus unpaid wages for wrongful termination and attorney fees. The claim is modest and obviously limits the expense which plaintiff may incur in pretrial discovery. On the other hand, the defendant, in this case, is a large multi-enterprise corporation. To ac-

---

**2.** A direction to an employee not to speak to the other party is different from the issue that this memorandum and order specifically addresses. However, the magistrate believes such a direction is a matter of spoliation wherein defendant could be attempting to restrict access to adverse information. If defendant had nothing to fear from the lawsuit, it would not feel the need for such a direction. The inference to be drawn is that defendant anticipates adverse statements. This raises an inference of wrongdoing on the part of defendant. Plaintiff should be allowed to use this adverse inference at the time of trial to support its claim that defendant had engaged in wrongdoing. However, the defendant denies any such wrongdoing. In this case, if plaintiff seeks to use the spoliation evidence at trial, a proper foundation for admission of the evidence must be presented.

**3.** In subsequent briefing, defendant also placed reliance on Model Rule 4.2 ABA Model Rules of Professional Conduct.

cept the defendant's position is to give a distinct economic advantage to the corporate structure and protect the corporate interest during litigation from cheaper discovery alternatives that a cost-conscious plaintiff, with limited assets, may wish to employ. See *National Conference on the Causes of Popular Dissatisfaction with the Administration of Justice,* reported 70 F.R.D. 83 (1976) 76 F.R.D. 277 (1978), 74 F.R.D. 159.

Defendant also cites to American Bar Association Opinion (No. 1410, 1978) which plaintiff contends prohibits contact with persons who had managerial responsibility on behalf of the corporation or with any other person whose act or omission in connection with the litigation "may be imputed to the organization for purposes of civil liability or whose statements may constitute an admission on the part of" the defendant corporation. This standard if accepted in light of Rule 801(d)(2)(D), Federal Rules of Evidence is essentially one of prohibiting *ex parte* interviews with corporate employees. Rule 801(d)(2)(D), F.R.E. provides that a non-hearsay admission takes place where there is a statement by an employee "concerning a matter within the scope of the agency or employment, made during the existence of the relationship ..." [4] Also of significance is the fact that counsel could not usually know of any possible admission by an employee until an interview is conducted. If counsel knew that no admissible evidence would be obtained from an interview, there would be little reason in most instances to interview the employee. To this extent the ethical rule [5] frustrates the search for the truth by preventing an opposing party from obtaining reasonable access to admissible evidence, it does not assist in the fair and accurate resolution of disputes.

The defendant's counsel filed an affidavit protesting the process used by plaintiff in the interview of defendant's employees. It is contended by defendant that without a warning of some sort to the employee such person is not really aware of the need for caution and for exact truth during the interview. There is little question the method used by plaintiff in some instances could be a significant impeachment tool.[6] On the other hand, the letter is not oppressive and asks the employee to advise counsel if the letter misstates the conversation. Also, the employee is given pretrial notice of his or her evidence. An affidavit from plaintiff's counsel, (File Entry # 28) shows that paralegals do the interviews under the direction of counsel with specific restrictions. A preliminary data inquiry sheet is provided for the interviewer. There is nothing overreaching or inherently abusive in the process and the defendant has not shown any conduct that is "unethical" in a literal sense.

Rule 1(g), *Civil Rules of Practice of the United States District Court for the District of Utah* provides the standards of conduct for attorneys practicing in this court. It states:

> The standards of conduct of the members of the bar of this court, of non-resident government attorneys and of nonresident attorneys admitted to practice before this court in a particular case shall be those prescribed by the Utah Code of Professional Responsibility and amendments thereto and revisions thereof and by the Code of Professional Responsibility approved by the Judicial Conference of the United States.

---

**4.** The trend under Rule 801(d)(2)(D) is to expand the scope of available evidence. This movement has been occurring naturally without an evidence rule by recognizing the evidentiary legitimacy of such declarations. Boyce, *Rule 63(9)(a) of Uniform Rules of Evidence—A Vector Analysis,* 5 Utah L.Rev. 311 (1957); *Grayson v. Williams,* 256 F.2d 61 (10th Cir.1958); Notes of Advisory Committee on Proposed Rules, ¶ (D). See also *World of Sleep, Inc. v. La Z-Boy Chair Co.,* 756 F.2d 1467 (10th Cir.1985).

**5.** Whether the rule is really one of ethics will be considered later. It is obvious however, the rule, as contended for by defendant, protects established economic organizations.

**6.** See Exhibit A to affidavit of defendant's counsel. This is a letter to an employee of defendant from plaintiff's counsel, stating the substance of the conversation by the employee with plaintiff's agent.

It is necessary, therefore, to look to the Utah Code of Professional Responsibility to determine the ethical limitations that may exist to restrict the plaintiff's interview process in this case. The parties have generally agreed that neither the Utah Supreme Court nor the Utah State Bar have made any judicial or ethical ruling as to the issue now before the court.

The Utah Supreme Court has adopted *Rules of Professional Conduct*, effective January 1, 1988.[7] It should be noted that these rules were adopted after Rule 1(g) of the *Rules of Civil Practice, U.S.D.C., Utah* which refers to the *Utah Code of Professional Responsibility.* Rule 1(g) was adopted May 1, 1987. Therefore, Rule 1(g) does not refer to the *Utah Rules of Professional Conduct* which have adopted the *ABA Model Rules of Professional Conduct.* The *Utah Rules of Professional Conduct* adopt ABA Rule 4.2. The Utah Rule 4.2 provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

The comment to this rule provides "This Rule is substantially identical to DR–7–104(A)(1)". Thus, the current Utah rule of ethics applicable to the issue in this case is not necessarily different than the prior Utah ethics rule, and the rules adopted by this court in Rule 1(g). However, the comment to Rule 4.2 of the Utah Rules of Professional Conduct also contains the language of the ABA Official Comment to ABA Rule 4.2. The Utah comment states:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with persons having a managerial responsibility on behalf of the organization, and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or *whose statement may constitute an admission on the part of the organization.* (Emphasis Added).

However, this comment of the Utah Rules is not applicable to the interpretation of Rule 1(g) of this court which is the former code standard of DR–7–104(A)(1).[8] Thus, it is concluded that the comments to model Rule 4.2 do not provide a binding construction to Rule 1(g) of this court and should not necessarily resolve the issue in this case if application of the comment would be contrary to good practice. However, the comments may be helpful to a proper resolution of a specific issue. If the Comments to Rule 4.2 are actually in pursuit of legitimate "ethical or professional standards", as distinct from perpetuation of an economic or social structure from fair inquiry by an adversary, they are entitled to sensitive consideration and even deference. This requires an evaluation of whether the construction the defendant seeks this court to give to Rule 1(g), *Rules of Civil Practice, U.S.D.C., Utah,* is in fact a legitimate ethical restraint which this court should superimpose on the discovery practice.

It is agreed that the court in *Chancellor v. Boeing Co.,* 678 F.Supp. 250, 253 (D.C. Kan.1988) is correct in its observation that the issue of ex parte interviews is not a discovery matter governed by the Federal Rules of Civil Procedure, Rule 26(c), but is governed by the Court's authority to control litigation practices:[9]

> As these ex parte interviews are not a method of discovery encompassed within Fed.R.Civ.P. 26(c), the court's authority

---

7. See Chapter 13, Utah Code of Judicial Administration.

8. Federal law governs the conduct of attorneys in federal court. A federal court is not bound by state court interpretations of the codes of professional responsibility. *Polycast Technology Corp. v. Uniroyal,* 129 F.R.D. 621 (D.C.S.D.N.Y. 1990). See also *In re Snyder* 472 U.S. 634, 645 n. 6, 105 S.Ct. 2874, 2881 n. 6, 86 L.Ed.2d 504

(1985); *United States v. Ryans,* 903 F.2d 731 (10th Cir.1990).

9. Recently in *United States v. Western Electric Co.,* 1990 WL 39129, 6 ABA/BNA Lawyers Manual on Professional Conduct p. 298 (D.C.D.C. 1990) the court held Rules 4.2 and DR–7–104 had no application to ex parte contacts by counsel where a statute allowed such contacts.

to enter a protective order stems from its inherent power to prohibit or remedy litigation practices which may raise or constitute ethical violations.

There is nothing in defendant's motion for a protective order which is inconsistent with plaintiff's rights of discovery under the Federal Rule of Civil Procedure. The magistrate however, believes there are other significant interests involved. First, is the concern that the discovery process, formal or informal, should not be unnecessarily inhibited. Second, the civil discovery process has become cumbersome and expensive, therefore, methods that assist in reducing discovery costs and providing reasonable alternatives should be supported. Third, it must be recognized that contemporary litigation is costly and often the "little guy," plaintiff or defendant is at a distinct disadvantage in the process.[10] Fourth, in certain types of litigation against a corporation a pattern of treatment of employees may be critical to proof of a claim. Such is true to some extent in Fair Labor Standards Actions.[11] Fifth, private litigation is an important means of controlling abuses of corporate power and restraining abuses of law. Sixth, corporate and other associational enterprises have a need to protect legitimate internal communication and corporate organizations have the same concerns as any other party, that persons in such organizations who have information relevant to litigation should not be coerced or abused. Seventh, corporate and associational organizations are entitled to the full protection of the advice and confidences of counsel. Eighth, any interview process should be a fair inquiry and designed to obtain truthful information and not distort the fact finding process. In this regard, it should be remembered that ex parte communications by a party litigant are still adversarial and not subject to immediate natural restraint or judicial intervention. Ninth, legitimate lawyer client relationships should not be diluted and relationships and communications properly within the scope of lawyer/client protection should not be breached. Tenth, an unwise extension of confidentiality restricts access to information and prevents courts from being fully effective in ferreting out the truth of a disputed claim. Eleventh, to the extent that formal discovery proceedings are rigidly required, the flow of litigation is inhibited and complexity and cost increased.[12] Twelveth, witnesses may be more willing to discuss a matter informally than in the adversarial context of formal discovery. With these considerations in mind, it is proper to consider the issue against the relevant authority.

The first issue is whether the argument of the defendant that this court should interpret Rule 1(g) *Rules of Civil Practice; U.S.D.C.* to embody the comments of ABA and Utah Model Rule 4.2 should be adopted. As noted above, Rule 1(g) does not expressly embrace the comments to the Utah and Model Rules. However, the argument may be advanced that it is appropriate to adopt such a construction because of the comments' persuasiveness. This depends on whether an important "ethical" end is legitimately advanced by an ethical code, rule, or comment.

This is the first consideration.

### Ethical Consideration

The ethical standards of the legal profession are designed, among other things, to avoid corruption of the profession, to facilitate the just settlement and resolution of disputes, to enhance the competency of the

---

**10.** A recent poll in the State of Utah shows the Utah public believes one of the significant problems with the courts in Utah is the cost of litigation. Dan Jones & Associates, Poll on Courts, conducted April 19–26, 1990.

**11.** In some Fair Labor Standards Act cases, employees' interests are antagonistic to the employer and employees must be afforded a privilege or other protection. See *Brock v. Gingerbread House, Inc.,* 907 F.2d 115 (10th Cir.1990).

**12.** Simplification of litigation is an important concern for federal courts today. See *Report of the Federal Courts Study Committee,* April 2, 1990. Chapter 5.

See also Justice Stewart and Rehnquist's statement, concurring with Justice Powell, dissenting from amendments to the Federal Rules of Civil Procedure, 85 F.R.D. 521 (1980).

legal profession, and to provide high quality service to the public and protect the public interest. Any ethical standard that restricts discovery should have a firm foundation in ethical policy interests that courts should "sedulously" foster. See infra post. A provision is not one of ethics simply because it is labeled as an "ethical standard".[13] The actual effect of the standard and its justification must be critically examined. If the ethical rule restricts the inquiry for evidence of truth and prevents ready access to information relevant to the litigation it should be recognized that the ethical rule is in fact, in evidentiary terms, a "privilege" and its utility should be assessed in the same manner. Professor Wigmore argued that certain requirements should exist for privileges to be legitimate and suggested principles that by analogy have application to the question of whether an ethical standard should be applied to restrict access to evidence. See Wigmore, *Evidence* (McNaughton Rev.) § 2285. Wigmore specified four conditions for privileges, two of which apply to the ethical considerations under examination in this case. First, "The relation must be one which in the opinion of the community ought to be sedulously fostered". Second, "the injury that would incur to the relation by the disclosure of the communication must be greater than the benefit thereby gained for the correct disposal of the litigation". In the case of a corporation-employee communication restriction, the communication limitation should be evaluated and justified by the status of the relationship. The more important the employees position in developing corporate policy or in carrying out corporate strategy, the more justification exists for an ethical limitation or restriction on outside communication adverse to the cooperation. As the employee becomes merely a low level operational employee, the need for a restriction is significantly reduced and a limitation on external communication truly frustrates the truth and fact finding process. Low level employees are not and should not be slaves of the corporate structure. Although the term "servant" is used in Rule 801(d)(2)(D), F.R.E. involving corporate admissions, it does not mean the employee is a mere service unit of production totally under the control of the economic power of the corporate structure. If the employee has information adverse to corporate policy or practice which is at issue in any litigation, the employee must be free to speak and the courts should have access to the evidence. Any concept of ethics which is to the contrary must be premised on a very special justification. The admissions restriction portion of the comments to Rule 4.2 of the ABA Model Rules of Professional Conduct is not supported by such justification. Applying Wigmore's criteria this is not a restriction that ought to be sedulously fostered.

Ethics involves more "than a pattern of observed forms of behavior, [or] rules of conduct ..." It should embody a "systematic code of moral principles" and "a philosophical theory about the rationale of moral action". *International Encyclopedia of the Social Sciences*, Vol. 5 "Ethics" p. 157 (1968). Ethics must be taken in relation to social structure. Id. "It is also important to try to distinguish those aspects of the mores that should properly be called ethical from those more properly called religious, legal, political or matters of etiquette". Id. p. 158.

In this context the "admissions" limitation in the comments to Rule 4.2 of the ABA and Utah Rules of Professional Conduct is not a legitimate statement of ethics.[14] Further, it does not foster the settlement of disputes or enhance the com-

---

**13.** Stahl, *Ex Parte Interviews with Enterprise Employees: Post Upjohn Analysis*, 44 Washington & Lee L.Rev. 1181, 1183 (1987) has noted that ethical standards have often evolved from litigation standards of an earlier era and may not be related to the present world of litigation.

**14.** "On examination, the rule restricting direct communications with a represented party proves to have a *political* as well as an ethical side" Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and The Client's Interests*, 127 Univ. of Pa.L.Rev. 683, 710 (1979). (Emphasis added) The limitations on non-client ex parte interviews because an admission may be involved is in reality a political standard. It is a socio-economic judgment.

petency of the legal profession. It does not protect the public interest or relate to avoiding the corruption of the legal profession. Its effect is to restrict legitimate inquiry and reinforce structured economic power and authority and prevent less costly means of access to the courts.

Therefore, it is concluded that application of F.R.E. 801(d)(2)(D) to the communications provision and comment of ethical rule DR–7–104(A)(1) (or Rule 4.2) would not be a legitimate exercise of ethical judgment. It does not foster a legitimate attorney client interest. Therefore, Los Angeles County Bar Ass'n Formal Op. 410 (March 24, 1983); Assn. Bar of City of N.Y. Inquiry No. 80–46 and other opinions mentioned herein, will be rejected as improper constructions of Rule 1(g) *Rules of Civil Practice U.S.D.C., Utah* to the extent that such a conclusion restricts ex parte contact with low level employees where an admission might be made which could be admissible against a corporation under F.R.E. 801(d)(2)(D).[15] The Comment to Rule 4.2 is not fully in harmony with the core ethical values expressed in the Preamble to the Model Rules of Professional Conduct.

### Judicial Construction

The above conclusion, however, does not resolve the issue. It is necessary to determine what ought to be the proper construction of Rule 1(g) Rules of Civil Practice, U.S.D.C. Utah as regards to DR–7–104(A)(1) and what standard should be applied to ex parte communication by a party with the corporate employees of the other party. This involves evaluating a proper rule for attorney conduct as well as accommodating legitimate non-formal discovery processes. In making this determination, the decisions of other courts should be evaluated to find a proper balance. No decision from the United States Court of Appeals for the Tenth Circuit[16] has been found, nor a published decision from a judge of this District, which governs this matter.[17]

In making a determination of this issue the court should exercise sensitivity to the purpose of DR–7–104(A)(1)[18] and the justifications for informal discovery. The purpose of the ethical rule limiting ex parte interviews with an opposing party represented by counsel is to preclude opposing a party from intruding into and undermining the attorney client relationship.

In *Upjohn v. United States*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) the Supreme Court recognized that the attorney/client privilege applies to the corporate setting. The court rejected the "control group" test as being too narrow a standard for the application of the lawyer/client privilege in the corporate context and held the proper test for determining the attorney/client privilege should be more flexible. Id. p. 390, 101 S.Ct. at 683. The court said that middle and lower level corporate employees, having relevant information to be communicated to an attorney, may be within the scope of the attor-

---

**15.** See for further consideration Muler and Calfo. *Ex parte Contact with Employees and Former Employees of a Corporate Adversary: Is it Ethical?* 42 *The Business Lawyer* 1053, 1058 (1987). The court accepts the general reasoning of *Amarin Plastics, Inc. v. Maryland Cup Corp.* 116 F.R.D. 36, 39–40 (D.C.Mass.1987); *Porter v. Arco Metals Div. of Atlantic Richfield* 642 F.Supp. 1116, 1117–1118 (D.C.W.D.Mont.1986); *Massa. v. Eaton Corp.,* 109 F.R.D. 312, 314 (D.C. W.D.Wash.1985) as to restrictions on interviews of high level managerial employees but not necessarily the mechanical application of the Comment to Model Rule 4.2.

**16.** Recently, in *United States v. Ryans,* 903 F.2d 731 (10th Cir.1990) the court ruled DR–7–104(A)(1) was not a restriction on federal prose-

cutors who could directly or through informers make ex parte contact with represented targets of pre-indictment criminal investigations.

**17.** This court has in other contexts denied the scope of relief which defendant seeks in this case. These rulings are unpublished.

**18.** DR–7–104(A)(1) of the ABA Code of Professional responsibility provides:

(A) During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

ney/client privilege. In this case,[19] defendants do not contend any breach of the attorney/client privilege as to defendant's employees is involved. If an attorney/client privilege could be asserted, *ex parte* communication by plaintiff's counsel with each of the defendant's employees, as were within the privilege, would be improper. In this case, the status level of the employees is such that they would probably be outside of the informational chain that would give rise to a lawyer/client privilege.

However, merely because an attorney/client privilege does not exist does not necessarily mean that an ex parte interview with affected corporate employees should be allowed. Other considerations have application.

In *Chancellor v. Boeing Co.*, supra; the court held that if the declarations of the employee could be imputed to the corporation, ex parte interview would be disallowed. This was applied to only managerial "speaking" level employees.

A lead case on this issue is *Wright By Wright v. Group Health · Hospital*, 103 Wash.2d 192, 691 P.2d 564 (1984). In that case the court held the attorney client privilege did not preclude an *ex parte* interview with corporate employees. Managerial employees would be considered as "parties" if they had the authority to bind the corporation. Also, the court held the corporation to have acted improperly in advising employees not to speak to opposing counsel. The court addressed DR–7–104(A)(1):

> Group Health next argues all of its current and former employees are "parties" within the meaning of CPR DR–7–104(A)(1) and the rule would be violated if plaintiffs' counsel attempted to contact Group Health's employees.

CPR DR–7–104(A) provides:

During the course of his representation of a client a lawyer shall not:

(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter

unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so.

CPR DR–7–104(A)(1) (rule) is based on the American Bar Association original version of Canon 9, which was superseded by the adoption of the American Bar Association of the Code of Professional Responsibility in 1970. Leubsdorf, *Communicating with Another Lawyer's Client: The Lawyer's Veto and the Client's Interest*, 127 U.Pa.L.Rev. 683, 685 n. 10 (1979) (Leubsdorf). The original Canon 9 read:

A lawyer should not in any way communicate upon the subject of controversy with a party represented by counsel; much less should he undertake to *negotiate* or *compromise* the matter with him, but should deal only with his counsel ... ABA Canons of Professional Ethics 9 (1908); H. Drinker, *Legal Ethics* 201 (1953); Leubsdorf, supra.

The official historical purposes of the rule and its predecessor Canon 9 were two-fold: preserving the proper functioning of the legal system and shielding the adverse party from improper approaches. ABA Comm. on Professional Ethics and Grievances, Formal Op. 108 (1934). Others characterized the historical purposes of the rule as preventing attorneys from "stealing clients" (H. Drinker, *Legal Ethics*, at 190), or to proscribe attorney contacts with represented parties so they would not diminish potential contingent fees by negotiating unfavorable settlements directly with clients. Note, *DR–7–104 of the Code of Professional Responsibility Applied to the Government "Party"*, 61 Minn.L.Rev. 1007, 1010 (1977) (Note, *Government "Party"*). In more recent years, however, the purpose of the rule has been said to shield the represented client from improper approaches. Note, *Government "Party"*, supra. See also *State v. Thompson*, 206 Kan. 326, 330, 478 P.2d 208 (1970). The general thrust of the rule is to prevent

---

**19.** Although the attorney/client privilege does not govern the issue in this case, the concept has some value by analogy.

situations in which a represented party may be taken advantage of by adverse counsel; the presence of the party's attorney theoretically neutralizes the contact. See Kurlantzik, *The Prohibition on Communication with an Adverse Party*, 51 Conn.B.J. 136, 145–46 (1977). After carefully considering the relevant authorities the court concluded:

We hold the best interpretation of "party" in litigation involving corporations is only those employees who have the legal authority to "bind" the corporation in a legal evidentiary sense, i.e., those employees who have "speaking authority" for the corporation. This interpretation is consistent with the declared purpose of the rule to protect represented parties from the dangers of dealing with adverse counsel. Leubsdorf, supra at 686–88. A flexible interpretation of "parties", moreover, advances the policy of keeping the testimony of employee witnesses freely accessible to both parties. See ABA Comm. on Professional Ethics and Grievances, Formal Op. 117 (1934). We find no reason to distinguish between employees who in fact witnessed an event and those whose act or omission caused the event leading to the action. It is not the purpose of the rule to protect a corporate party from the revelation of prejudicial facts. Accord, *Coburn v. Seda*, 101 Wash.2d 270, 276–77, 677 P.2d 173 (1984) (discovery immunity statute will be strictly construed; it does not grant an immunity to information available from original sources). Rather, the rule's function is to preclude the interviewing of those corporate em-

ployees who have the authority to *bind* the corporation. H. Drinker, *Legal Ethics* 201 (1953).

This court believes this approach is a common sense analysis.[20]

Ex parte interviews with salaried employees was allowed in *In Re Investigation of FMC Corp.*, 430 F.Supp. 1108 (D.C.S.D. W.Va.1977). This seems to be in keeping with standard of most court decisions which have limited the use of ex parte inquiries to instances where the interviews were with control group, managerial level, or speaking agents but not with general status employees, absent a special showing of an unusual relationship warranting protection. Annotation, *Right of Attorney to Conduct Ex Parte Interviews With Corporate Party's Non–Management Employees*, 50 ALR 4th 652.

Most recently the New York Court of Appeals examined this issue in *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990). The case involved personal injury litigation where counsel wished to interview corporate employees who had witnessed an accident. The court considered whether the employees were "parties" under DR–7–104(A)(1) of the Code of Professional Responsibility. The Appellate Division had held an employee of a corporation was a party.[21] The Court of Appeals stated, "In the main we disagree with the Appellate Division's conclusions". Id. 559 N.Y.S.2d p. 495, 558 N.E.2d p. 1032. The court said that "disciplinary rules have a different provenance and purpose" than statutes or rules. The court also stressed DR–7–104(A)(1) does not define the term

---

**20.** The court does not agree that *Loudon v. Mhyre*, 110 Wash.2d 675, 756 P.2d 138 (1988) changed the Washington court's position, since that case involved an ex parte contact with a party's treating physician. That is a different issue and cases are quite diverse in their conclusions. See Asher, et al., *Ex Parte Interviews With Plaintiff's Treating Physician—The Offensive Use of the Physician Patient Privilege*, 67 U. of Detroit L.Rev. 501, 528 (1990).

The defendants also cite to *Hewlett–Packard Co. v. Superior Court*, 205 Cal.App.3d 43, 252 Cal.Rptr. 14 (1988). That case was depublished by the California Supreme Court on November 28, 1989. The California Supreme Court ap-

proved a new disciplinary provision which allows attorneys to make ex parte communications with certain corporate employees. See Cal. Rules Prof. Conduct, Rule 2–100; *Triple A Mach. Shop v. State of California*, 213 Cal. App.3d 131, 261 Cal.Rptr. 493 (1989) (Injunction on ex parte contact with employee was improper).

**21.** The defendant in this case cited to and argued for the application of the Appellate Division's position. See, p. 11 of defendant's Supplemental Reply Memorandum. The Appellate Division opinion is reported in 149 A.D.2d 94, 545 N.Y.S.2d 153 (1989).

"party" and that many courts have applied a test balancing the competing interests. The court also observed, "At one extreme is the blanket rule adopted by the Appellate Division and argued by defendants, and at the other is the 'control group' test—both of which we reject. The first is too broad and the second too narrow". Id. 559 N.Y.S.2d p. 496, 558 N.E.2d p. 1033. The court then stated the legitimacy of ex parte interviews:

> Nor, in our view, is it necessary to shield all employees from informal interviews in order to safeguard the corporation's interest. Informal encounters between a lawyer and an employee—witness are not—as a blanket ban assumes—invariably calculated to elicit unwitting admissions; they serve on-recognized values in the litigation process. Moreover, the corporate party has significant protection at hand. It has possession of its own information and unique access to its documents and employees; the corporation's lawyer thus has the earliest and best opportunity to gather the facts, to elicit information from employees, and to counsel and prepare them so that they will not make the feared improvident disclosures that engendered the rule.

559 N.Y.S.2d at 497, 558 N.E.2d at 1034.

The court rejected the relationship of the ethical principle to the evidentiary standards for admissions under Rule 801(d)(2)(D), F.R.E. Id. 559 N.Y.S.2d p. 498, 558 N.E.2d p. 1035. The court went on to fashion a more balanced but precise standard:

> In practical application, the test we adopt thus would prohibit direct communication by adversary counsel "with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are di-

rectly at stake in a representation". (Wolfram, op. cit., s 11.6, at 613). This test would permit direct access to all other employees, and specifically—as in the present case—it would clearly permit direct access to employees who were merely witnesses to an event for which the corporate employer is sued. Apart from striking the correct balance, this test should also become relatively clear in application. It is rooted in developed concepts of the law of evidence and the law of agency, thereby minimizing the uncertainty facing lawyers about to embark on employee interviews. A similar test, moreover, is the one overwhelmingly adopted by courts and bar associations throughout the country, whose long practical experience persuades us that—in day-to-day operation—it is workable.[22]

559 N.Y.S.2d at 498, 558 N.E.2d at 1035.

■ This court is convinced the New York Court of Appeals has struck the proper balance of fairness, support for legitimate ethical considerations under DR–7–104(A)(1), and clarity of application and rationality in common sense terms for informal discovery. Therefore, this court will adopt the standard of the New York Court of Appeals as the applicable standard to resolve this case and as a proper construction consistent with Rule 1(g) of the *Rules of Civil Practice, U.S.D.C., Utah.*

Applying this standard the defendant's motion for protective relief should be denied. In addition, this opinion should clarify defendant's role in such process and no further direction or restriction is needed to keep defendant from preventing its employees from interfering with plaintiff's efforts to conduct ex parte interviews with low level non-managerial employees.[23]

### *Protective Process*

■ The defendant has requested plaintiff be restricted on the method of interview of defendant's employees, and that

---

**22.** The court cited to cases, most of which have been canvassed here, and Bar Association opinions.

**23.** There is no evidentiary basis to conclude that the provisions of 29 U.S.C. § 215(A)(3), of the Fair Labor Standards Act, has been violated by defendant.

cross-examination of witnesses by tape recording or the use of confirmation letters to witness interviewed be disallowed. (File Entry # 24). There is no reason to adopt such a position. Such an evidentiary approach is legitimate. Defendant's employees may be considered as persons "identified with" the defendant under Rule 611(c), F.R.E. and leading questions and cross-examination of such persons is proper. Further, exercising the magistrate's pre-trial authority under 28 U.S.C. § 636(b)(1)(A) the matter is inappropriate for a protective order at this time and should be left to the trial court's determination under Rule 611(a) F.R.E.[24]

## Conclusion

The court concludes that the interpretive restrictions of the Comment to Rule 4.2 of the *Rules of Professional Responsibility of the Utah State Bar* or DR–7–104(A)(1) do not apply in this court to restrict ex parte interviews with low level corporate employees, and that an "admissions" test, comparable to the standards for evidentiary admissions under Rule 801(d)(2)(D) F.R.E., should not be applied to restrict plaintiff's ex parte interviews with corporate employees. The standard applied by plaintiff in undertaking ex parte interviews with defendant's employees should be compatible with this memorandum. Therefore,

IT IS HEREBY ORDERED that the defendant's motion for a protective order to restrict plaintiff's counsel from conducting interviews with defendant's non-managerial employees, who have no legal power to bind the corporation, is denied. The defendant's further request for procedural protective restrictions in conducting such interviews, is denied. The plaintiff's request for an order prohibiting the defendant from directing its employees not to consult with plaintiff or plaintiff's counsel and agents is denied as unnecessary, but the denial is without prejudice.

---

**24.** However, it is recommended that when a confirmation letter is sent by plaintiff to the defendant's employee, a notice of that fact be given to defendant's counsel.