SHEARSON LEHMAN BROTHERS, INC., Successor in Interest to Shearson Lehman Hutton, Inc., Plaintiff,

v.

WASATCH BANK, a Utah Banking Corporation, Defendant.

No. 90–C–814A.

United States District Court, D. Utah, C.D.

Oct. 25, 1991.

Thomas R. Grisley, Parsons, Behle & Latimer, Salt Lake City, Utah, for plaintiff.

Linda J. Barclay, Howard, Lewis & Petersen, Provo, Utah, for defendant.

## ORDER

ALDON J. ANDERSON, Senior District Judge.

The parties having submitted memoranda, the court heard oral argument on Plaintiff's Motion for Authority to Conduct Ex Parte Interviews on September 13, 1991. The court has carefully considered the arguments presented by both parties and now renders its order granting plaintiff's motion.

### I. Factual Background

Although the parties have indicated some differences between their respective views of the facts underlying the current dispute, for purposes of this motion, the court has proceeded on the basis that the facts essentially are as follows. As of March, 1987, Stanley Erb was employed as an account executive at Shearson's Provo office. Erb was charged with the responsibility for managing the accounts maintained with Shearson by the Wordperfect Corporation, a computer software business based in Provo, Utah. According to his duties with respect to the Wordperfect accounts, Erb received hand delivery of a check drawn by Wordperfect and payable to "ABP Investments." Apparently, this check was inadvertently given to Erb, but since Erb's ostensible objective in receiving the check was to deposit the funds into a Wordperfect account at Shearson, Erb represented to Wordperfect that he would insure that the funds eventually arrived in the proper account and that Shearson need not write a new check. Contrary to that representation, Erb opened an account at Shearson in the name of ABP Investments. Over the course of the next year, Erb conducted a series of transactions whereby checks were drawn by Shearson on the ABP Investments account payable to ABP Investments. Erb then fraudulently endorsed those checks and deposited the funds in his personal bank account at Wasatch's Orem, Utah, office.

Wordperfect assigned its rights in this matter to Shearson. Shearson filed suit on September 4, 1990. Its complaint is based primarily on the alleged unreasonable banking practices of Wasatch in that it failed to adequately verify the authenticity of the endorsements or Erb's authority to deposit checks on behalf of ABP Investments.

After filing its complaint, Shearson obtained, through interrogatories, the identities of twenty-four former employees of Wasatch who were bank tellers during the relevant time periods. Shearson now seeks this court's permission or authority to contact those former employees ex parte. The narrow question presented for determination is to what extent the ethical rules adopted by this court preclude an opposing attorney from engaging in ex parte contact with the former employees of a represent-

ed corporate party. This narrowly stated issue is one of first impression in this jurisdiction.

## II. Discussion

Pursuant to the local rules of practice adopted by this court:

All attorneys practicing before this court, ... shall be governed by and shall comply with the rules of practice adopted by this court and, unless otherwise provided, with the Utah Rules of Professional Conduct, as revised and amended; with the ABA Model Rules of Professional Conduct; and with the decisions of this court interpreting those rules and standards.

Rules of Practice, United States District Court for the District of Utah, 103–1(h) (1991). With respect to the ethical guidelines at issue in this case, both the Utah Rules of Professional Conduct and the ABA Model Rules of Professional Conduct are identical. Effective January 1, 1988, the Utah Supreme Court adopted, verbatim, Rule 4.2 of the ABA Model Rules of Professional Conduct, as Rule 4.2 of the Utah Rules of Professional Conduct. *See* Model Rules of Professional Conduct Rule 4.2 (1983). That rule provides:

In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

Utah Rules of Professional Conduct 4.2 (1990). Taken on its face, the rule clearly could not apply to ban ex parte contact with former employees unless the applying court broadly construed the textual term "party." There is no indication in the text of the rule that such a broad construction was anticipated by its drafters. Courts and attorneys attempting to implement the rule are not, however, left entirely without guidance as to the rule's proper scope. The commentary appended to the rule [1] partially explains the application of the rule in a factual context involving a corporate or other organizational party:

In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation with [1] persons having a managerial responsibility on behalf of the organization, and with [2] *any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability* or [3] whose statement may constitute an admission on the part of the organization.

Utah Rule Professional Conduct Rule 4.2 cmt (numbering and emphasis added).

■ In situations involving ex parte contact with former employees, the first and third categories of persons within the scope of the rule as defined by the comment are inapplicable. *See, e.g., Public Serv. Elec. & Gas Co. v. Associated Elec. & Gas Ins. Servs., Ltd.,* 745 F.Supp. 1037, 1039 (D.N.J.1990) ("Neither section regulates contact with former low level employees."). Indeed, the parties in the present case have essentially stipulated that the first and third categories encompassing managerial employees and employees whose statements are admissible as admissions of the organizational party do not here apply. *See* Plaintiff's Memorandum of Points and Authorities in Support, Doc. 34 at 7 ("Shearson does not seek to interview any current [Wasatch] employees. Therefore, the first and third categories are clearly not applicable to Shearson's request"); Defendant's Memorandum in Opposition, Doc. 43 at 5 ("Courts interpreting [the comment] have uniformly found that subsections (1) and (3) apply to current employees of an organization only"). The court must therefore determine the proper construction and application of the second category of persons identified by the comment as within the scope of the rule—those whose acts or omissions in connection with the matter are

1. Utah has adopted the ABA promulgated comments to Rule 4.2. *See* Utah Rules of Professional Conduct Rule 4.2 cmt.

attributable to the organization for civil or criminal liability.

In support of its argument that former employees are not within the scope of Rule 4.2, Shearson relies primarily on *Bouge v. Smith's Management Corp.*, 132 F.R.D. 560 (D.Utah 1990). *Bouge* is the only reported case from this court addressing the ethical restraints on an attorney's contact with persons associated with an opposing organizational party. That case involved a Fair Labor Standards Act action. In the course of discovery, the plaintiff moved to compel the defendant to show cause why plaintiff's counsel should not be allowed to contact persons then employed by the defendant. Plaintiff sought to contact only low-level grocery store employees in non-management and non-policy-making positions. Magistrate Boyce held that ex parte contact with such low-level non-managerial employees was not prohibited by the then-enacted DR 7–104(A)(1) [2] and that the comment to Rule 4.2 was not binding on the court. *Id.* at 567–70. Moreover, in response to the argument that the comment to Rule 4.2 should be used as an interpretive guide in construing DR 7–104(A)(1), the Magistrate concluded that the comment is "not fully in harmony with the core ethical values expressed in the Preamble to the Model Rules of Professional Conduct." *Id.* at 567. In setting forth the test governing to what extent an attorney may contact present, and presumably former, employees of a corporate party without contravening the ethical rule, the Magistrate adopted the holding of *Niesig v. Team I*, 76 N.Y.2d 363, 559 N.Y.S.2d 493, 558 N.E.2d 1030 (1990). In *Niesig*, the New York Court of Appeals held:

> In practical application, the test we adopt thus would prohibit direct communication by adversary counsel "with those officials, but only those, who have the legal power to bind the corporation in the matter or who are responsible for implementing the advice of the corporation's lawyer, or any member of the organization whose own interests are directly at stake in a representation." ... This test would permit direct access to all other employees, and specifically—as in the present case—it would clearly permit direct access to employees who were merely witnesses to an event for which the corporate employer is sued.

*Id.*, 559 N.Y.S.2d at 498–99, 558 N.E.2d at 1035–36 (citation omitted). Magistrate Boyce quoted this test and adopted it as the correct construction of DR 7–104(A)(1) under local rule 1(g). *Bouge*, 132 F.R.D. at 570.

Relying on *Bouge*, Shearson now contends that, if this court's only reported case addressing the issue allowed ex parte communication with persons presently employed by the corporate party in low-level positions, the rule clearly permits ex parte contact with *former* low-level employees. Shearson's reliance on *Bouge* is, however, misplaced. First, by its own language, *Bouge* is limited to the Utah and Model Codes of Professional Responsibility because, at the time of the decision, this court was still applying those rules. *Bouge*, 132 F.R.D. at 564; *see also supra* footnote 2. Because attorneys practicing in federal court are now governed by the Utah and Model Rules of Professional Conduct, *Bouge*'s discussion of the scope of DR 7–104(A)(1) is inapplicable to the extent the new rule is different from the old rule. Since the comment to Rule 4.2 is an innovation of the drafters of the Model Rules and

---

**2.** DR 7–104(A)(1) is the analog to the currently enacted Rule 4.2 which existed under the Model Code of Professional Responsibility and the Utah Code of Professional Responsibility. The text of that rule is "substantially identical" to the text of the current rule. Utah Rules Professional Conduct Rule 4.2 cmt. Under the predecessor to Local Rule 103–1(h), Rule 1(g), Civil Rules of Practice of the United States District Court for the District of Utah, attorneys practicing in this court were obligated to comply with the Utah Code of Professional Responsibility and the ABA Code of Professional Responsibility. As of the time of the dispute in *Bouge*, the Utah Supreme Court had adopted the Model Rules of Professional Conduct. Nevertheless, Magistrate Boyce determined that the district court continued to adhere to the Code of Professional Responsibility because the local rule was enacted before the adoption of the Model Rules. *Bouge*, 132 F.R.D. at 564. In 1991, however, the local rules were amended to adopt the Utah Rules of Professional Conduct and the ABA Model Rules of Professional Conduct.

by its language suggests that the scope of Rule 4.2 might be broader than the scope of DR 7–104(A)(1), it is clear that the newly adopted ethical rule is different from the rule it replaced. Therefore, *Bouge* is founded upon an entirely different ethical rule and is not directly applicable to the present facts. Second, this court simply disagrees with *Bouge*'s holding that the comment to Rule 4.2 is "not in harmony with the Preamble to the Model Rules." *Bouge*, 132 F.R.D. at 567.

The court must therefore look beyond the mere text of the rules and comments and the decisions of this court to address the issue presented. Wasatch urges the court to adopt the principles set forth in *Public Service Electric & Gas Co. v. Associated Electric & Gas Insurance Services, Ltd.*, 745 F.Supp. 1037 (D.N.J.1990) ("*PSE & G*"), and *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J.1991). In *PSE & G*, Judge Politan of the District of New Jersey addressed the issue here presented. In that case, Judge Politan reversed a Magistrate Judge's order directing a party seeking to initiate ex parte contact with former employees of a corporate party to inform the corporate party of the interview. The Magistrate's order also required a warning letter to be sent to any employee to be interviewed delineating the nature of the suit and the purpose of the requested interview. *PSE & G*, 745 F.Supp. at 1038. The court determined that Rule 4.2 of the ABA Model Rules prohibits *any* informal contacts with the former employees of an organizational party. *Id.* at 1039. Judge Politan explained how the second subsection to the comment to Rule 4.2 includes former employees within the scope of the rule:

> [T]he harm caused by the imputable act is the same whether the witness is a present or former employee. The change in employment status does not effect the nature of his or her actions vis-a-vis whether they are imputable to the employer. The impact of the acts and factual testimony remains the same.... Therefore, both the present and former employee should be con-

sidered a party represented by the corporate attorney.

*Id.* at 1042.

The *PSE & G* decision is appealing in several respects. First, it provides a bright-line test for members of the bar seeking to comply with ethical rules. Second, it advances one of the policy goals underlying the ethical rule: to protect parties and witnesses from overreaching by attorneys. Third, it arguably aids in the development of clear factual records in the sense that it fosters use of depositions. While depositions are admittedly a more expensive discovery technique than informal, ex parte interviews, they protect "the rights of all parties without unduly favoring or prejudicing" either, and they are "far more reliable and ethically sound" than informal discovery tools. *Id.* at 1043. Despite its appeal, however, this decision has been criticized for the overbreadth of its holding and the court is unable to locate any reported decision in which *PSE & G* has been adopted. Indeed, each case which has considered it appears to have rejected the approach. *See e.g., Hanntz v. Shiley, Inc.*, 766 F.Supp. 258, 267 (D.N.J.1991) ("the policies of RPC 4.2 do not justify a wholesale restriction on discovery of factual information, damaging or not); *DuBois v. Gradco Systems, Inc.*, 136 F.R.D. 341, 345 (D.Conn.1991) (rejecting *PSE & G* approach); *Curley v. Cumberland Farms, Inc.*, 134 F.R.D. 77, 80 (D.N.J.1991) ("4.2 does not create a bright-line test prohibiting all *ex parte* contacts with former employees of a corporate party"); *State of New Jersey v. CIBA–Geigy Corp.*, 247 N.J.Super. 314, 589 A.2d 180, 184 (App.Div. 1991) (same, citing *Curley*). This court also declines to adopt the bright-line test of *PSE & G* as the proper interpretation of Rule 4.2 under our local rule.

Wasatch next argues that, if *PSE & G*'s blanket prohibition against all ex parte contact with former employees is not adopted, the court should then adopt some intermediate position that recognizes that the former employees of an organizational party can be brought within the scope of Rule 4.2 under specified circumstances. To support this argument, Wasatch relies on *Curley v.*

*Cumberland Farms, Inc.*, 134 F.R.D. 77 (D.N.J.1991). In that case, the New Jersey District Court rejected the constraining approach of *PSE & G* in favor of a rule which recognizes that the scope of the comment to Rule 4.2 is broad enough to encompass former employees in situations where the actions or statements of that employee can be imputed to the organizational party. *Id.* at 81–82. In *Curley*, however, the party seeking to avoid ex parte contact with its former employees failed to demonstrate adequately that the acts or statements of the persons sought to be contacted could, in fact, be imputed to the organizational party. *Id.* at 82. The court concluded that any such imputation was purely hypothetical and held that "the corporate party seeking to establish the equivalent of party-status for its former employees under RPC 4.2 must bear the burden of coming forward with a basis to include those ex-employees within the parameters of RPC 4.2 based on *fact*, not hypotheticals." *Id.* at 82 (emphasis in original; citation omitted). Wasatch cites other cases which, it argues, further support the rule that former employees whose acts or omissions are imputable to an organization are within the scope of Rule 4.2. *See PPG Indus., Inc. v. BASF Corp.*, 134 F.R.D. 118, 121 (W.D.Pa. 1990) (subsection 2 of comment "plainly may apply to present or former employees of the corporate party"); *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 40 (D.Mass.1987) (implying that the comment to Rule 4.2 might be relevant to DR 7–104(A)(1) in restricting ex parte contact with former employees whose acts are attributable to the organization); *Chancellor v. Boeing Co.*, 678 F.Supp. 250, 254 (D.Kan.1988) (same under DR 7–104(A)(1)); *University Patents, Inc. v. Kligman*, 737 F.Supp. 325 (E.D.Pa.1990) (former employees within scope of the rule if they held confidential positions or their conduct is the subject of the litigation).

In light of recent developments in the law and commentary addressing the issue of the scope of Rule 4.2, Wasatch's argument that former employees are within the scope of the rule is rejected. Most notably, in March, 1991, the American Bar Association, Committee on Ethics and Professional Responsibility issued a formal opinion addressing Rule 4.2 as it relates to former employees of an organizational party. ABA Comm. on Ethics and Professional Responsibility, Formal Op. 91–359 (1991). In that opinion, the committee observed that the comment to Rule 4.2 acts as a limitation on *present* corporate employees covered by the rule. *Id.* The committee concluded:

> While the Committee recognizes that persuasive policy arguments can be and have been made for extending the ambit of Model Rule 4.2 to cover some former corporate employers, [sic] the fact remains that the text of the Rule does not do so and the comment gives no basis for concluding that such coverage was intended. Especially where, as here, the effect of the Rule is to inhibit the acquisition of information about one's case, the Committee is loath, given the text of Model Rule 4.2 and its Comment, to expand its coverage to former employees by means of liberal interpretation.

> Accordingly, it is the opinion of the Committee that a lawyer representing a client in a matter adverse to a corporate party that is represented by another lawyer may, without violating Model Rule 4.2, communicate about the subject of the representation with an unrepresented former employee of the corporate party without the consent of the corporation's lawyer.

*Id.* Even under this seemingly permissive rule, however, the ABA Committee emphasized that lawyers seeking to engage in ex parte contact with the former employees of a corporate party do not do so unchecked by ethical rules. As the ABA opinion sets forth:

> With respect to any unrepresented former employee, of course, the potentially-communicating adversary attorney must be careful not to seek to induce the former employee to violate the privilege attaching to attorney-client communications to the extent his or her communications as a former employee with his or her former employer's counsel are pro-

tected by the privilege.... Such an attempt could violate Rule 4.4 (requiring respect for the rights of third persons).

The lawyer should also punctiliously comply with the requirements of Rule 4.3, which addresses a lawyer's dealings with unrepresented persons. That rule, insofar as pertinent here, requires that the lawyer contacting a former employee of an opposing corporate party make clear the nature of the lawyer's role in the matter giving occasion for the contact, including the identity of the lawyer's client and the fact that the witness's former employer is an adverse party.

*Id.* (citations omitted).

The ABA Committee's interpretation of Rule 4.2 has subsequently been adopted by several courts that have considered the issue. *See, e.g. Hanntz v. Shiley, Inc.*, 766 F.Supp. 258, 271 (D.N.J.1991) (ex parte contact allowed so long as attorney does not violate attorney client privilege or Model Rule 4.3); *DuBois v. Gradco Systems, Inc.*, 136 F.R.D. 341, 346–47 (D.Conn.1991) (refusing to depart from "traditional rule" allowing ex parte contact with former employees but recognizing that such contact must not violate attorney-client privilege or Model Rule 4.3); *Action Air Freight, Inc. v. Pilot Air Freight Corp.*, 769 F.Supp. 899, 903 (E.D.Pa.1991) (ex parte contact allowed so long as attorney-client privilege not violated); *cf. Monsanto Co. v. Aetna Casualty & Sur. Co.*, 593 A.2d 1013, 1016 (Del.Super.Ct. 199) (Rule 4.2 does not prohibit ex parte contact with former employees because such persons cannot bind the corporation, but Rule 4.3 imposes ethical duties which limit such contact).

Today this court joins the ranks of those which have construed Rule 4.2 consistently with the position taken by the ABA Committee on Ethics and Professional Responsibility. Under this court's rules of practice, Utah Rule of Professional Conduct 4.2 as well as ABA Model Rule 4.2 do not prohibit ex parte contact with the former employees of an organizational party that is represented by counsel. Consistent with the ABA position, however, the court recognizes that other rules govern and limit the scope and method of ex parte informal communication with such former employees. Specifically mentioned by the ABA Committee on Ethics and Professional Conduct were the ethical rules regarding the attorney-client privilege and Rule 4.3 which governs an attorney's dealings with an unrepresented party. It should be noted, however, that these two ethical restraints do not exhaust the list of potential rules which may apply to ex parte contact with former employees of a corporate party. Fortunately, the court is not called upon to compile such a list. Suffice it to say that the full spectrum of ethical requirements that bind the attorney in any other situation is equally binding when the attorney engages in ex parte contact with an unrepresented former employee of an opposing organizational party.

Accordingly, Shearson's motion for authority to conduct ex parte interviews with persons formerly employed as tellers for Wasatch is granted. Shearson's counsel is once again cautioned that strict compliance with all applicable ethical guidelines will be required and any evidence obtained in violation thereof will be subject to suppression.

IT IS SO ORDERED.