THOMAS NIESIG, Appellant, v TEAM I et al., Defendants and Third-Party Plaintiffs-Respondents. DETRAE ENTERPRISES, INC., Third-Party Defendant-Respondent.

Second Department, August 7, 1989

## APPEARANCES OF COUNSEL

*Winter & Bass (Emily Bass* of counsel), for appellant.

*McCoy, Agoglia, Beckett & Fassberg, P. C. (Patrick J. Crowe* of counsel), for third-party defendant-respondent.

### OPINION OF THE COURT

BRACKEN, J. P.

Subject to certain exceptions not relevant to this case, DR 7-104 (A) (1) of the Code of Professional Responsibility prohibits a lawyer from communicating with an adverse party whom he knows to be represented by an attorney in connection with the subject matter of that representation. The principal question presented on this appeal is whether the plaintiff's attorney may, consistent with the prohibition contained in DR 7-104 (A) (1), communicate on an ex parte basis with certain individuals who, as employees of the corporate third-party defendant, are presumptively within the scope of the representation afforded by the attorneys who appeared on behalf of that corporation. We agree with those authorities which have expressed the view that such communications should not be permitted *(see, e.g., Hewlett-Packard Co. v*

*Superior Ct. [Jensen],* 252 Cal Rptr 14; Miller and Calfo, *Ex parte Contact with Employees and Former Employees of a Corporate Adversary: Is It Ethical?,* 42 Bus Law 1053 [1987]), and we reject, for both theoretical and practical reasons, the position adopted by other authorities, which is that under certain ill-defined circumstances, depending on the particular employee-witness's status with the corporation, such communications may be allowed *(see, e.g., Wright v Group Health Hosp.,* 103 Wash 2d 192, 691 P2d 564; *Chancellor v Boeing Co.,* 678 F Supp 250 [D Kan]; Comment, 82 Nw U L Rev 1274 [1988]).

■ This appeal also presents the question of whether the plaintiff, in an action based in part on strict liability pursuant to the Labor Law, may seek pretrial disclosure from the defendants both by conducting depositions and by serving interrogatories. We hold that there is no statutory or other prohibition against conducting pretrial discovery in such a manner.

## I

The plaintiff claims that on December 17, 1986, he was injured when he fell from scaffolding adjacent to a building under construction in Plainview, New York. In his complaint, he alleges that the accident occurred on property owned by the defendant Team I, a partnership consisting of the five individual codefendants. He also alleges that defendant J.M. Frederick Construction of New York, Inc. (hereinafter J.M. Frederick), was the general contractor on the site. The plaintiff, in seeking a money judgment against these defendants, advances two separate causes of action, one premised on common-law negligence, and one premised on strict liability pursuant to Labor Law § 240.

A third-party action was later brought against the third-party defendant, DeTrae Enterprises, Inc. (hereinafter De-Trae); however, the pleadings served in connection with this third-party action have been omitted from the record. The plaintiff claims that he was employed by DeTrae at the time of the accident.

On July 31, 1987, during the course of pretrial discovery, the plaintiff's attorney served a set of interrogatories upon the attorneys who at that time represented the defendant J.M. Frederick. A response to at least some of these interrogatories was later served upon the plaintiff's attorney at a preliminary

conference held on November 5, 1987. A separate set of interrogatories was also served by the plaintiff on the attorneys for the third-party defendant DeTrae. These interrogatories, however, have never been answered.

A deposition of a witness for J.M. Frederick was scheduled for February 18, 1988. In connection with this deposition, J.M. Frederick's attorney was of the opinion that, since his client had already responded to the plaintiff's written questions, it was relieved of any obligation to produce a witness to respond to the plaintiff's oral questions as well. Thus, at the deposition held on February 18, 1988, the witness produced by J.M. Frederick was instructed to refuse to answer any questions put to him by the plaintiff's attorney. Although this witness was deposed by counsel for DeTrae, this questioning was not satisfactory to the attorney for the plaintiff.

At the conclusion of the deposition on February 18, 1988, the attorney for the third-party defendant DeTrae advised the attorney for the plaintiff that DeTrae did not consider it necessary to respond to the interrogatories which had been served on it several months earlier. His position was that a party whose deposition upon oral questions has been demanded need not respond to written questions as well.

DeTrae's attorney has thus taken a position similar to that of J.M. Frederick's; that is, that a party to a personal injury action based on, among other things, a claimed violation of the Labor Law, need not, during pretrial discovery, submit to both oral and written questions. Since J.M. Frederick has already answered the plaintiff's interrogatories, it now refuses to allow its witness to be orally deposed by plaintiff's attorney; conversely, since DeTrae has made a witness available for an oral deposition, it now refuses to answer the plaintiff's interrogatories.

The dispute between the parties concerning the scope of pretrial discovery could not be resolved at a second conference held on April 18, 1988, and the Supreme Court, Nassau County, suggested that the plaintiff make a formal written motion for the relief sought. The plaintiff did so, and by notice of motion dated May 18, 1988, sought, *inter alia:* (1) to compel the defendant J.M. Frederick to produce its witness to be deposed by the attorney for the plaintiff, and (2) to compel the third-party defendant DeTrae to respond to the interrogatories served by the plaintiff.

In this motion, the plaintiff also sought to compel DeTrae to

respond_to_ a demand for the names and addresses of all "employees present at 8:00 a.m. on December 17, 1986 at the DuPont Road, Plainview, construction site". The plaintiff also sought authorization for its "counsel [to] contact the individuals [to be identified by DeTrae as potential witnesses to the occurrence] on an ex parte basis". In support of this branch of the motion the plaintiff's attorney averred that a former employee of DeTrae had testified at a deposition that several DeTrae employees had been present at the site on the day of the accident. The plaintiff's attorney argued that since these employees could not be called "managerial" or "controlling", the plaintiff's attorneys should be permitted to have "ex parte" contact with them.

J.M. Frederick opposed the plaintiff's motion, and its attorney argued, among other things, that pursuant to CPLR 3130, his client could not properly be required to submit to a deposition by the plaintiff, since it had already served responses to the plaintiff's interrogatories. The third-party defendant DeTrae also opposed the plaintiff's motion, and cross-moved for a protective order. In support of the cross motion, the attorney for DeTrae argued that the plaintiff's attorney had already conducted depositions of two of DeTrae's employees, as well as a deposition of a nonparty former employee of DeTrae. Under these circumstances, DeTrae's attorney argued, DeTrae should not be required to respond to the plaintiff's interrogatories. DeTrae's attorneys also opposed so much of the plaintiff's motion as sought permission to conduct ex parte interviews with DeTrae's employees.

In its order disposing of this motion and cross motion, the Supreme Court, among other things, (1) denied that branch of the plaintiff's motion which was to compel J.M. Frederick to be deposed, (2) denied that branch of the plaintiff's motion which was to compel DeTrae to respond to his interrogatories, and (3) denied that branch of the plaintiff's motion which was for authorization for plaintiff's attorney to conduct ex parte interviews of nonmanagerial employeees of DeTrae. The plaintiff appeals from these portions of the order.

## II

The plaintiff's first and most highly elaborated argument on appeal is that the Supreme Court's "prohibition against ex parte contact with possible witnesses [employed by DeTrae] is wholly without legal support, plainly unconstitutional and

grossly unfair to plaintiff and his counsel". We believe that this argument is wrong on all three counts. To the extent that this aspect of the order appealed from precludes ex parte contact with current employees of DeTrae, it is correct; however, the scope of the order is overbroad to the extent that it precludes such contact with individuals who are no longer employed by DeTrae and who therefore cannot be considered parties to the present action.

## A

The legal support for the Supreme Court's determination on this issue may be found in Code of Professional Responsibility DR 7-104 (A) (1), which provides:

"(A) During the course of his representation of a client a lawyer shall not:

"(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so".

This rule prohibits the plaintiff's attorney from communicating with any "party he knows to be represented by a lawyer" without that lawyer's consent.

In order to avoid the prohibition against ex parte communications reflected in this rule, the plaintiff's attorney seeks to have the term "party" defined by judicial construction so as to include only (1) parties who are themselves natural persons, and (2) those individuals who may be considered as the "alter egos" of parties which are not themselves natural persons. According to this argument, whenever a plaintiff sues a jural entity such as a corporation, a partnership, an unincorporated association, a joint venture, or any other business organization —or, for that matter, *any* public or private body, as opposed to the individuals of which it consists—the plaintiff's attorney should be free to bypass the attorney appearing on behalf of such a defendant, and to communicate on the subject matter of the litigation with any employee or agent of that defendant, except for those who may be considered to be the "alter ego" of the entity involved.

The plaintiff does not contend that his attorney should have the right to conduct ex parte interviews of those nonparty employees of a corporate defendant who, for whatever reason, might have chosen to retain their own personal attorney in

connection with the subject matter of this litigation. In the present case, for example, if a particular individual employed by DeTrae, not named as a party to this action, should have chosen to retain his own attorney, we do not understand the plaintiff to argue that his attorney could have the right, consistent with the ethical dictates of DR 7-104 (A) (1), knowingly to conduct an interview of that nonparty employee in the absence of the attorney. Thus, the plaintiff's argument in the present case seems to be premised on an assumption which is invalid, namely, the assumption that the attorneys who represent DeTrae in fact do not represent its employees. The plaintiff assumes, in other words, that DeTrae's attorneys have *no* attorney-client relationship with the employees of DeTrae whom the plaintiff seeks to interview. On the contrary, unless there is proof that the scope of the representation of DeTrae is more limited, it must be presumed to extend not only to DeTrae as a corporate abstraction, but also to every current agent or employee of DeTrae who is connected in any way with the present civil action for damages.[1]

It is clear, for example, that any agent of DeTrae could avail himself of the attorney-client privilege with respect to communications made by him to DeTrae's attorneys on the subject matter of this litigation. The general rule is that the attorney-client privilege may apply to communications made by all corporate employees to corporate counsel in connection with a particular litigation, and that the privilege is not limited to only those communications made by the corporation's "control group". This was the essential holding of the Supreme Court in *Upjohn Co. v United States* (449 US 383).

In the *Upjohn* case, it appeared that the general counsel for Upjohn Company had solicited confidential information from various Upjohn Company employees in connection with an internal investigation into certain "questionable payments" to foreign governments *(Upjohn Co. v United States, supra,* at 386). In connection with a subsequent investigation of these payments by the Internal Revenue Service, the United States District Court for the Western District of Michigan ordered the enforcement of a subpoena which called for the production of documents, including ones compiled by counsel for the Upjohn Company in connection with his investigation *(Upjohn*

---

1. By the same token, DeTrae's attorneys cannot be presumed to represent *former* employees or agents of DeTrae. Thus, DR 7-104 (A) (1) does not apply at all to former employees of DeTrae, unless it is shown that a particular former employee has retained his own attorney.

*Co. v United States, supra,* at 387-388). The United States Court of Appeals for the Sixth Circuit held that a hearing was necessary in order to distinguish the corporation's "control group" from its other agents, upon the theory that only communication with counsel made by the "control group" would be covered by the attorney-client privilege *(Upjohn Co. v United States, supra,* at 388-389).

The Supreme Court reversed and held that Federal Rules of Evidence rule 501, which codifies the attorney-client privilege which existed at common law, applies to all corporate employ-. ees and not only to the corporation's "control group". The court stated that the "narrow 'control group test' sanctioned by the Court of Appeals in this case cannot, consistent with 'the principles of the common law as . . . interpreted . . . in the light of reason and experience,' Fed. Rule Evid. 501, govern the development of the law in this area" *(Upjohn Co. v United States, supra,* at 397).

The *Upjohn* case *(supra)* defines the scope of the common-law attorney-client privilege, which has been adopted in New York *(see,* CPLR 4503, 3101 [c]; *Rossi v Blue Cross & Blue Shield,* 73 NY2d 588 [memo from corporate staff attorney to corporate officer held privileged]; *Cornell Mfg. Co. v Mushlin,* 85 AD2d 592 [statements made by corporate employees to attorney for corporate plaintiff held privileged]; *see also, City of Elmira v Larry Walter, Inc.,* 89 AD2d 645 [communication between insurance company's account analyst and surety attorney employed by insurance company held privileged]). There is no logical reason to limit the application of the definition in the *Upjohn* case of the scope of the attorney-client relationship to situations where only the scope of the attorney-client privilege is in issue. Applying the *Upjohn* definition of the scope of the attorney-client relationship to the instant case, we find that the attorney-client relationship between DeTrae's attorneys and DeTrae extends prima facie to all current DeTrae employees who are connected in any way with the subject of this litigation.

Thus, it must be presumed, at least until the contrary is shown, that each employee of DeTrae whom the plaintiff's attorney seeks to interview on an ex parte basis is currently within the scope of the confidential attorney-client relationship between DeTrae and its attorneys. By relying on the dictates of DR 7-104 (A) (1), DeTrae's attorneys are, in connection with the present litigation, holding themselves out as attorneys for DeTrae's employees, as well as for DeTrae itself,

and absent a conflict of some sort, this is entirely proper. It is important to note, by the same token, that the plaintiff's attorneys neither allege nor prove that the scope of the representation by DeTrae's attorneys of their client is more limited, for it is obvious that, in a typical case, the attorneys for one party will rarely if ever be in any position to dictate the scope of the representation afforded by the attorney for an adverse party.

Acceptance of the plaintiff's contention that the prohibition against ex parte contact with an adverse party found in DR 7-104 (A) (1) applies only to a corporate party's "control group" or "alter ego" would require either a holding that the scope of the attorney-client relationship is more narrow with respect to questions arising in connection with ethical rules such as DR 7-104 (A) (1), than it is with respect to questions arising in connection with the scope of the attorney-client privilege *(Upjohn Co. v United States, supra,* at 383), *or* a holding that certain low-level employees of a corporate party may be interviewed on an ex parte basis by adverse counsel irrespective of the fact that they are within the scope of the representation provided by the corporation's attorney. Neither of these propositions is theoretically sound.

## B

The rule advocated by the plaintiff should be rejected not only by virtue of its theoretical deficiency, but also because of the immense practical difficulties which, it may easily be foreseen, would result from attempts to apply the rule in particular cases. Most importantly, the plaintiff has offered no concrete standard by which the courts could distinguish, in a consistent manner, between the type of corporate employees with respect to whom ex parte contact by adverse counsel would be forbidden, on the one hand, and the type of corporate employees with respect to whom such contact would be allowed, on the other.

The plaintiff suggests that the "alter egos" of any given corporate or institutional party may be distinguished from that party's other agents by reference to the evidentiary question of whether the particular agent could "speak for" or "bind" the corporation *(see, Wright v Group Health Hosp.,* 103 Wash 2d 192, 691 P2d 564, *supra).* In other words, the rules which govern the admissibility of hearsay statements made by the agents of a corporate or other type of institutional party

would also serve as the standard by which to distinguish those high-level employees who may not be contacted on an ex parte basis from those low-level employees who may.

Application of the test proposed by the plaintiff would lead to the development of a rule which would, in effect, permit attorneys to conduct ex parte interviews with virtually all of the employees of an adverse corporate party. This is so because under New York law hearsay statements made by an agent are admissible in evidence against the agent's employer only when the statement is made (1) within the scope of the agent's authority, *and* (2) during the course of the agent's performance of his duties *(see, e.g., Loschiavo v Port Auth.,* 86 AD2d 624, *affd* 58 NY2d 1040; *Brusca v El Al Israel Airlines,* 75 AD2d 798; *Prado v Onor Oscar, Inc.,* 44 AD2d 604, 605; *Menkelunas v City of New York,* 270 App Div 827; *Golden v Horn & Hardart Co.,* 244 App Div 92, *affd* 270 NY 544; Richardson, Evidence § 253 [Prince 10th ed]; Fisch, New York Evidence § 800 [2d ed]; McCormick, Evidence § 267 [3d ed]). It is exceedingly rare that a corporate litigant, represented by counsel, will explicitly confer upon any of its employees the authority to engage in ex parte communications with adverse counsel; similarly, it is difficult to imagine any circumstances in which a corporate party would implicitly confer such authority. It is also difficult to understand how any statement which might be made by a corporate employee in response to an ex parte interrogation by an attorney for an adverse party, during the pendency of litigation, could ever be viewed as having been made in the course of that employee's actual duties. In general, one would think that it would be the duty of any employee to *refuse* to speak to an attorney whose interest is hostile to that of his employer; it is certainly difficult to imagine, in the context of any legal action or proceeding, circumstances under which the employee of a corporate party would actually be duty-bound by the terms of employment to *cooperate* with a hostile attorney.[2]

The adoption of a rule authorizing attorneys to conduct ex.

___

2. As a matter of fact, the plaintiff expressly states in his brief on appeal that "[t]he interviews which [he] proposes to conduct would only concern factual matters 'outside' the scope of such individuals' employment". This amounts to a concession that under New York rules of evidence any statements obtained in such interviews might not be admissible against DeTrae at trial. The plaintiff fails to note, however, that the same would be true of the statements made by *any* agent of DeTrae during an ex parte interview with adverse counsel, even if that agent were the corporation's chief executive officer or principal shareholder. There is no correlation

parte interviews with any agent of an adverse corporate party whose statements may not later be admissible at trial would thus constitute the granting of a virtual *carte blanche* to conduct ex parte interviews with the employees of institutional defendants under almost any circumstance. It is thus clear that the evidentiary rules governing the admissibility of hearsay statements made by corporate agents do not provide an adequate standard to distinguish a corporation's "control group" from its other agents.

There have been different formulations of various other standards for distinguishing a corporation's control group from its other employees *(see,* Annotation, *Right of Attorney to Conduct Ex Parte Interviews with Corporate Party's Nonmanagements Employees,* 50 ALR4th 652 [1986]). We find that all of these standards are unacceptably imprecise and we believe that all of them would prove to be unworkable.

The standard mentioned in the Comment to ABA Model Rules of Professional Conduct rule 4.2, which states that that rule's prohibition against ex parte contact "does not prohibit communication with lower echelon employees who are not representatives of the organization" *(see, e.g., Porter v Arco Metals Co.,* 642 F Supp 1116, 1117) seems to us to be totally unworkable. There simply is no available criterion by which to determine which corporate employees belong to any given corporation's "higher echelon", and which employees belong to its "lower" one.

Another standard, adopted in a different case, is based on the question of whether the particular corporate employee sought to be interviewed could routinely be compelled to submit to a deposition on behalf of the corporation *(Sobel v Yeshiva Univ.,* 28 Empl Prac Dec [CCH], at 32,749). This standard is virtually meaningless when applied under New York law, since under CPLR article 31 the scope of disclosure by way of deposition extends to any "officer, director, member, agent or employee of a party" (CPLR 3101 [a] [1]; 3106 [b]). Although a corporate party may, in the first instance, choose whom to produce as its witness at a deposition *(e.g. National Reporting v State of New York,* 46 AD2d 576, 578; *Prudential Ins. Co. v Ward Prods. Corp.,* 57 AD2d 259, 261), an adverse

---

between the status which a particular witness occupies within the hierarchy of his corporate employer and the question whether a particular statement made by the witness could be viewed as having been made in the scope of his employment.

party, subject to the discretionary regulation of the trial court, is entitled to conduct further depositions so as to obtain testimony from any corporate employee who is shown to have knowledge of the facts in issue. Thus, the supposed criterion of whether a particular corporate employee could "routinely" be compelled to testify at a deposition is so vague as to be illusory.

A third proposed standard is based on whether the employee in question would have the power to settle legal controversies in which his corporate employer is involved (see, e.g., *McKitty v Board of Educ.,* US Dist Ct, SD NY, Dec. 16, 1987, Tyler, J.; *Frey v Department of Health & Human Servs.,* 106 FRD 32). Aside from its lack of clarity, this standard suffers from the obvious practical defect that in many cases *no* officer of a corporate litigant will have the exclusive power to settle a case, since such power is often shared with the corporation's liability insurance carrier, which, in many cases, has undertaken to defend the litigation.

In short, there is no reliable criterion which allows us to distinguish between the corporation's "control group" and its other employees. There is, consequently, no firm basis upon which to distinguish those employees of a corporation represented by counsel who, pursuant to the plaintiff's argument, could properly be contacted ex parte by an adverse attorney, from those who could not. For this practical reason alone, the plaintiff's argument must be rejected.

It is also readily apparent that acceptance of the plaintiff's argument would engender a significant amount of litigation addressed to the question of whether, in particular cases, particular corporate employees are or are not within the company's "control group". Since an attorney who violates DR 7-104 (A) (1) is subject to disqualification, as well as to disciplinary sanctions (see, e.g., *Matter of Shapiro,* 90 AD2d 22), it is to be expected that, if we were to adopt the rule advocated by the plaintiff, any attorney planning to engage in ex parte contact with an individual employed by an adverse party would first seek judicial authorization.[3] This could easily result in a flood of pretrial litigation involving the question of whether, in a particular case, a particular employee of a particular corporate party is, or is not, that party's "alter ego". Such a torrent of litigation would be all the more

---

3. The attorneys for the plaintiff in the present case acted properly in seeking an advance ruling on this issue.

unfortunate in light of the plaintiff's failure to specify any workable standard by which the courts could be guided in making such a determination.

Acceptance of the plaintiff's argument would therefore also relegate to the courts the onerous task of distinguishing between "control group" employees and "noncontrol group" employees in the absence of any clear standard against which to make such a distinction. In the interest of clarity, then, we reject the "control group" test, and hold, as has at least one other court, that " '[i]t is not proper for opposing counsel or its investigator to contact ex parte an employee of a corporation that is a party to a suit knowing that the information sought from the employee relates to a subject of controversy' " *(Hewlett-Packard Co. v Superior Ct. [Jensen],* 252 Cal Rptr 14, 16 *supra; see also, Mills Land & Water Co. v Golden W. Refining Co.,* 186 Cal App 3d 116, 230 Cal Rptr 461; Miller and Calfo, *Ex parte Contact with Employees and Former Employees of a Corporate Adversary: Is it Ethical?,* 42 Bus Law 1053 [1987]).

## C

We hold that the terms of DR 7-104 (A) (1) may effectively be enforced "only by viewing *all present employees* of a corporation as 'parties' " (Comm on Professional Ethics of Assn of Bar of City of NY Opn No. 80-46 [emphasis added]).

The plaintiff's claim that "public policy considerations" require that his attorney be permitted to have ex parte contact with DeTrae's current employees is meritless. It is clear that the considerations referred to by the plaintiff are, in fact, not ones of *public* policy at all, but rather ones of personal expedience.

The plaintiff seeks to have us view the legal issue at hand as one requiring the balancing of two competing interests: the plaintiff's need to obtain information in order to aid in his "search for the truth" *(see, Frey v Department of Health & Human Servs.,* 106 FRD 32, 36-37), on the one hand, and DeTrae's interest in preventing its employees from supplying its adversaries with prejudicial information, on the other. However, it has not been suggested, much less proved, that the witnesses sought to be interviewed ex parte could not be compelled to testify at regular pretrial depositions; certainly, if there is reason to believe that any one of them in fact possesses relevant information (something which cannot be

inferred from mere presence at the scene of the accident), the Supreme Court could properly direct DeTrae to produce the witness for a deposition. The Supreme Court did not prohibit plaintiff's counsel from interviewing these witnesses; it merely prohibited such interviews from occurring ex parte. Thus, it is clear that the interest sought to be advanced by the plaintiff is not that of obtaining the information necessary to prepare for trial, but rather, that of obtaining such information *in a particular way,* that is, through the procedure of an ex parte interview. Once it is seen for what it is, the plaintiff's argument that such ex parte interviews should be allowed in order to advance his "search for the truth" is likely to persuade only those who, contrary to the basic axioms of the American legal system, believe that one-sided, inquisitorial procedures are more effective than adversarial ones in arriving at the truth.

The real interests which the plaintiff seeks to advance in this case are too obvious to be concealed by his repeated references to "the quest for truth". First, it is obvious that the practice of conducting ex parte interviews with adverse parties would be more inexpensive than seeking their testimony through normal discovery channels. Second, the likelihood that a witness will, in response to an improperly phrased or leading question, make an improvident response prejudicial either to his employer or to himself is greater when that witness has no counsel present. It is therefore obvious that the plaintiff's personal interests in achieving a financial and a tactical advantage in the litigation are the real policies which would be advanced by acceptance of his argument; the "public policy" to which he alludes would not only not be advanced in any way, but would in fact suffer if, as the plaintiff proposes, the ethical norms reflected in the terms of DR 7-104 (A) (1) were relaxed.

The plaintiff's resort to constitutional law in his attempt to persuade us that his attorney should be allowed to conduct ex parte interrogations of employees of adverse parties is even more ill-founded than his resort to "public policy". The cases relied upon by the plaintiff in connection with this argument *(e.g., Railroad Trainmen v Virginia Bar,* 377 US 1; *Gulf Oil Co. v Bernard,* 452 US 89) are inapposite. We do not believe that either the United States Constitution or the New York State Constitution secures a right to attorneys who are actively involved in litigation to conduct ex parte examinations of the employees of adverse parties.

## D

For all the foregoing reasons, we conclude that DR 7-104 (A) (1) should be construed in a manner which provides the attorneys who practice law in this State with a clear and unambiguous definition of what does and what does not constitute unethical conduct. This is all the more important, given the fact that attorneys have an obligation not only to avoid engaging in conduct which is actually unethical, but also to avoid engaging in conduct which even appears to be unethical *(see,* Code of Professional Responsibility EC 9-6; *Cardinale v Golinello,* 43 NY2d 288, 296; *Matter of Kelly,* 23 NY2d 368, 376; *Bridges v Alcan Constr. Corp.,* 134 AD2d 316, 317). The integrity of the legal profession would not be well served by the creation of a rule which infuses a substantial amount of ambiguity into one of the most important and most widely recognized of all ethical precepts (Code of Professional Responsibility DR 7-104 [A] [1]). The principal argument advanced by the plaintiff on appeal should therefore be rejected.

## III

■ The second issue raised on appeal may be resolved by reference to CPLR 3130 (1), which authorizes the service of interrogatories under stated conditions. This statute provides, in part, that "[i]n the case of an action to recover damages for personal injury * * * predicated *solely* on a cause or causes of action for negligence, a party shall not be permitted to serve interrogatories on and conduct a deposition of the same party * * * without leave of court" (emphasis added). The plaintiff is correct in arguing that the present action is not one "predicated solely on a cause or causes of action for negligence", and it follows that this statutory limitation does not apply.

The phrase "predicated solely on a cause or causes of action for negligence" should be given a literal construction. Actions which are based in part on negligence and in part on some other legal theory should not be held to be "predicated solely on * * * negligence". It is noteworthy that, in construing the terms of CPLR 3130 as it existed prior to 1979 *(see,* L 1979, ch 197, eff Sept. 1, 1979), the courts defined the phrase "action to recover damages for * * * a personal injury, resulting from negligence" so as to exclude actions premised, in part, on some other theory *(e.g., Allen v Minskoff,* 38 NY2d 506, 509-510; *Gellis v Searle & Co.,* 40 AD2d 676; *Ford Motor Co. v*

*Burke Co.,* 51 Misc 2d 420 [breach of warranty]; *Ribley v Harsco Corp.,* 57 AD2d 228 [strict products liability]).

It is clear that, like an action based in strict products liability or breach of warranty, an action based on a claimed violation of Labor Law § 240 is substantively different from an action based on negligence. Liability may be imposed on an owner or general contractor pursuant to Labor Law § 240 "without regard to principles or concepts of negligence" *(Crawford v Leimzider,* 100 AD2d 568, 569; *see also, Bland v Manocherian,* 66 NY2d 452; *Zimmer v Chemung County Performing Arts,* 65 NY2d 513). The strict liability that may be imposed under this section is not the equivalent of liability premised on proof of actual negligence.

It might be argued that the plaintiff's use of dual discovery devices (interrogatories and depositions) should be limited to his cause of action brought pursuant to the Labor Law. Thus, for example, it could be argued that defendant DeTrae should be required to answer only those interrogatories which relate to the plaintiff's Labor Law cause of action. We need not pause to answer this question of law because we find, as a matter of discretion, that under the particular facts of this case, the "leave of court" authorized by the terms of CPLR 3130, should have been granted. DeTrae should be directed to serve responses to the plaintiff's interrogatories and J.M. Frederick should be directed to produce its witness to be examined by the attorney for the plaintiff. In the interest of full pretrial disclosure, the courts should not be reluctant to authorize, under appropriate circumstances, the use of interrogatories even where depositions have been held.[4]

## IV

Accordingly, the order under review is modified, (1) by deleting the provisions thereof which (a) denied those branches of the plaintiff's motion which were to compel the defendant J.M. Construction to submit to a deposition conducted by the plaintiff's attorney, and to compel the third-party defendant to respond to the plaintiff's interrogatories,

---

4. Since DeTrae did not object to the plaintiff's interrogatories within 10 days, it may seek to have them vacated only upon certain limited grounds *(see,* CPLR 3133 [a]; *Albany Custom Floors v Urbach, Kahn & Werlin,* 128 AD2d 924; *Kleinberg v American Mayflower Life Ins. Co.,* 106 AD2d 268; *Rinaldo v Syracuse Univ.,* 51 AD2d 675). Since the interrogatories are not patently improper, and do not invade any privilege, we find that they should not be vacated.

and (b) granted that branch of the third-party defendant's cross motion which was to vacate the plaintiff's interrogatories, and substituting therefor provisions granting those branches of the plaintiff's motion, denying that branch of the third-party defendant's cross motion and directing J.M. Construction to produce Mauro Ricchiuti, or, if he is no longer employed by it, another witness to be deposed by the plaintiff, and directing the third-party defendant to respond to the plaintiff's interrogatories and (2) by deleting the provision thereof which denied that branch of the plaintiff's motion which was for authorization to the plaintiff's attorney to conduct ex parte interviews of the individuals named by the third-party defendant as possible witnesses, and substituting therefor a provision granting that branch of the plaintiff's motion only to the extent of authorizing the plaintiff's attorney to interview persons who are not currently employed by any adverse party represented by an attorney and otherwise denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements, the third-party defendant shall answer the plaintiff's interrogatories within 20 days after service upon it of a copy of this decision and order with notice of entry, and J.M. Construction shall produce a witness to be deposed by the plaintiff upon written notice of not less than 10 days, to be provided by the plaintiff.

LAWRENCE, HARWOOD and BALLETTA, JJ., concur.

Ordered that the order is modified, (1) by deleting the provisions thereof which (a) denied those branches of the plaintiff's motion which were to compel the defendant J.M. Construction of New York, Inc., to submit to a deposition conducted by the plaintiff's attorney, and to compel the third-party defendant to respond to the plaintiff's interrogatories, and (b) granted that branch of the third-party defendant's motion which was to vacate the plaintiff's interrogatories, and substituting therefor provisions granting those branches of the plaintiff's motion, denying that branch of the third-party defendant's cross motion, and directing J.M. Contruction of New York, Inc. to produce Mauro Ricchiuti, or if he is no longer employed by it, another witness to be deposed by the plaintiff, and directing the third-party defendant to respond to the plaintiff's interrogatories, and (2) by deleting the provision thereof which denied that branch of the plaintiff's motion which was for authorization to the plaintiff's attorney to conduct ex parte interviews of the individuals named by the

third-party defendant as possible witnesses, and substituting therefor a provision granting that branch of the motion only to the extent of authorizing the plaintiff's attorney to interview persons who are not currently employed by any adverse party represented by an attorney, and otherwise denying that branch of the motion; as so modified, the order is affirmed insofar as appealed from, without costs or disbursements; the third-party defendant shall answer the plaintiff's interrogatories within 20 days after service upon it of a copy of this decision and order, with notice of entry, and the defendant J.M. Frederick Construction of New York, Inc. shall produce a witness to be deposed by the plaintiff upon written notice of not less than 10 days, to be provided by the plaintiff.