Police Officer Joy CARTER–
HERMAN, et al.

v.

CITY OF PHILADELPHIA, et al.

Civ. A. No. 95–4030.

United States District Court,
E.D. Pennsylvania.

Sept. 15, 1995.

Gilbert B. Abramson, Philadelphia, PA, for plaintiffs.

E. Jane Hix, Philadelphia, PA, for defendants.

## MEMORANDUM

BARTLE, District Judge.

This is a civil rights action in which a female police officer and a female police sergeant allege sexual harassment and retaliation by members of the Philadelphia Police Department ("the Department"). Plaintiffs have sued the City of Philadelphia, the Police Commissioner, and twelve other police officers of various ranks. At an early status conference, plaintiffs' counsel indicated his desire to interview non-party police officers without the presence of anyone representing the defendants. The City of Philadelphia opposed any ex parte interviews. To resolve the propriety of such contacts, the City has filed a motion for a protective order pursuant to Rule 26(c) of the Federal Rules of Civil Procedure.[1] The City contends that the Pennsylvania Rules of Professional Conduct preclude plaintiffs' counsel from ex parte

communications with any current employee of the Department.

Pursuant to Local Rule 83.6 of the United States District Court for the Eastern District of Pennsylvania, the Rules of Professional Conduct adopted by the Supreme Court of Pennsylvania constitute the ethical rules which govern attorney conduct absent a specific rule of this court to the contrary. Rule 4.2 of those Rules provides:

> In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized by law to do so.

■ The purpose of Rule 4.2 is to prevent lawyers from taking advantage of uncounselled lay persons and to preserve the efficacy and sanctity of the lawyer-client relationship. *See* G.C. Hazard, Jr., & W.W. Hodes, *The Law of Lawyering* 730 (2d ed. 1990); C.W. Wolfram, *Modern Legal Ethics* § 11.6 612–13 (1986).

■ Neither the Pennsylvania Supreme Court nor the Court of Appeals for the Third Circuit has spoken on the application of Rule 4.2 to ex parte communications with current employees of a represented party. However, the Comment[2] to Rule 4.2, which is intended to guide our interpretation of the Rule, provides in relevant part:

> In the case of an organization, this Rule prohibits communications by a lawyer for one party concerning the matter in representation *with persons having a managerial responsibility on behalf of the organization,* and with any other person whose act or omission in connection with that matter may be imputed to the organization for purposes of civil or criminal liability or whose statement may constitute an admis-

---

1. The rule reads in relevant part:
   Upon motion by a party or by the person from whom discovery is sought, ... and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court in the district where the deposition is to be taken may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense ...

2. According to the "Scope" of the Rules, "The comment accompanying each Rule explains and illustrates the meaning and purpose of the Rule. The Preamble and this note on Scope provide general orientation. The comments are intended as guides to interpretation, but the text of each Rule is authoritative.

sion on the part of the organization ... (Emphasis added).

According to the Comment, counsel may not communicate with three categories of individuals who are connected with an opposing organization. First, the rule protects persons having "managerial responsibility on behalf of the organization." The use of the present tense "having" indicates that this prohibition pertains to current employees only. Second, the rule covers any other person whose act or omission in connection with the matter may be imputed to the organization. This seems to apply to both present and former employees of the opposing party. Third, the rule applies to any other person whose statement may constitute an admission of the organization. The Federal Rules of Evidence define an "admission" as "a statement made by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." Fed. R.Evid. 801(d)(2)(D).

Notwithstanding the language of Rule 4.2 and the Comment, defendants rely on several decisions for the proposition that an informal interview with any individual employee of the Philadelphia Police Department, even those not individually named as parties, would constitute an ethical violation. They are *Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325 (E.D.Pa.1990); *Niesig v. Team I,* 149 A.D.2d 94, 545 N.Y.S.2d 153 (1989); and *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899 (E.D.Pa.1991), *appeal dismissed,* 961 F.2d 207 (3rd Cir.1992).

Defendants' reliance on *Univ. Patents, Inc.* is misplaced. In that case, University Patents, Inc. and the Trustees of the University of Pennsylvania sued to recover royalties from a Dr. Kligman. Plaintiff sought disqualification of Kligman's attorney because of ex parte contacts with university employees. *Univ. Patents, Inc.,* 737 F.Supp. 325, 326 (E.D.Pa.1990). The court held that Rule 4.2's prohibition on ex parte communications with opposing party applied to deans, trustees, department chairmen, and the provost of the university and that Rule 4.2 did not apply to former employees. *Id.* at 328. The Court did not enter a blanket prohibition against

speaking to all of plaintiffs' employees. Rather, the court only forbade defendant from using any information obtained from (a) the university's officers, directors and managers; (b) those whose acts or omissions could bind or impute liability to the university and (c) those whose statements could be used as admissions. *Id.* at 330.

The City's citation of *Niesig v. Team I* is likewise without merit. In that personal injury case, plaintiff's counsel sought to interview privately a corporate defendant's employees who witnessed the accident. *Niesig v. Team I,* 149 A.D.2d 94, 95–6, 545 N.Y.S.2d 153, 153–4 (1989). The Appellate Division of the New York Supreme Court held that direct interviews by plaintiff's counsel were barred with all current employees of the defendant corporation who witnessed the underlying accident because "... [t]here simply is no available criterion by which to determine which corporate employees belong to any given corporation's 'higher echelon,' and which employees belong to its 'lower' one." *Id.* at 104–05. However, the New York Court of Appeals reversed this broad prohibition. The Court of Appeals held that only those "employees with 'speaking authority' for the corporation, and employees who are so closely identified with the interests of the corporate party as to be indistinguishable from it, are deemed 'parties' for purposes of" the prohibition on ex parte contacts. *Niesig v. Team I,* 76 N.Y.2d 363, 559 N.Y.S.2d 493, 498, 558 N.E.2d 1030, 1035 (1990).

Finally *Action Air Freight, Inc.,* is of no help to the City. There plaintiff sought to enjoin defendant's counsel from conducting ex parte contacts with its former managerial employees and non-managerial employees who were currently working for the defendant. *Action Air Freight, Inc.,* 769 F.Supp. 899, 900 (E.D.Pa.1991). The court held that Rule 4.2 did not preclude defendant's counsel from making these ex parte contacts. *Id.* at 904.

Plaintiffs rely on two cases outside this District that permit opposing counsel to conduct ex parte interviews with employees of a represented party. The first is *Bouge v. Smith's Management Corp.,* 132 F.R.D. 560 (D.Utah 1990) in which the court, pursuant to

Rule 4.2, held that defendant's directive prohibiting its non-managerial employees from speaking to plaintiff's counsel was impermissible because it "restricts the inquiry for evidence of truth and prevents ready access to information relevant to the litigation ..." *Id.* at 566. This case, however, is of limited value. The court there had not adopted the Comment to Rule 4.2 and analyzed the issue differently than required here. *Id.* at 564.

In the second decision on which plaintiffs rely, *Frey v. Dep't of Health and Human Services,* 106 F.R.D. 32 (E.D.N.Y.1985), a sex discrimination suit against the Social Security Administration, the court defined the term "party" in accordance with DR–7–104(A)(1) of the Code of Professional Responsibility.[3] *Id.* at 35–6. It limited the definition of party to those employees who were the agency's alter ego, including high level managerial employees who participated in the decisions not to promote plaintiff. However, the court permitted contact with the remaining employees. *Id.*

Plaintiffs argue that the Philadelphia Police Department is a close fraternity. They contend that many within the ranks would be willing to provide information about sex harassment but fear retribution unless they can speak privately and without attribution. According to plaintiffs, if a representative of the City were present at any interview, police officers would not talk. On the other hand, the City, while not opposed to interviews, wants the right to be present, since it claims to represent all city employees including the police, at least when they are acting within the scope of their employment. The City notes that some of those interviewed could end up as defendants in this or other lawsuits.

▌ We do not accept the notion that every city employee is automatically a represented party simply by virtue of his or her employment without any initiative on the part of the employee to obtain legal help from the City. Otherwise an organization could thwart the purpose of Rule 4.2 simply by unilaterally pronouncing its representation of all its employees. On the other hand, even assuming the merits of plaintiffs' arguments about the difficulty in obtaining evidence without ex parte contacts, we cannot permit communications which violate the intent of Rule 4.2. The Rule with its Comment allows plaintiffs' counsel to contact and interview ex parte only those employees of the Philadelphia Police Department who do not have "managerial responsibility." We need not deal with the other two prongs of the official comment here. The City does not argue that the act or omissions of any officers without management responsibility can be imputed as a matter of law to the City or that the statements of non-managerial police officers would constitute admissions.

▌ The court has reviewed the written job descriptions of the various ranks of the Philadelphia Police Department for the purpose of determining who has managerial responsibility.[4] The Department's ranks are: Commissioner, Deputy Commissioner, Chief Inspector, Inspector, Staff Inspector, Captain, Lieutenant, Sergeant, Detective, Corporal, Officer, Officer I, and Officer Recruit. It is clear that the Commissioner, Deputy Commissioners, Chief Inspectors, Inspectors, Staff Inspectors, Captains, and Lieutenants have managerial responsibility. Captains, for example, command entire police districts or direct the work of a specialized police unit, while Lieutenants command an assigned shift in a district or a special police unit. (Letter from Hix to the Hon. Harvey Bartle III of 8/29/95). Captains and Lieutenants exercise significant individual judgment and discretion outside of established policies and procedures. *Id.* While those with the rank of Detective, Corporal, Officer, Officer I, and

---

**3.** DR–7–104(A)(1) of the Code of Professional Responsibility provides in relevant part:

(A) During the course of his representation of a client a lawyer shall not:
(1) Communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent

of the lawyer representing such other party or is authorized by law to do so.

**4.** This determination is based on the Department's table of organization and list of various job responsibilities supplied at the Court's request. (Letter from Hix to the Hon. Harvey Bartle III of 8/29/95).

Officer Recruit carry important duties for the public safety, they do not have managerial responsibility. We are left with the rank of Sergeant. Although the City argues that a Sergeant has managerial responsibilities significant enough to invoke the rule 4.2 prohibition by "directing a squad of police officers," we find this contention to be unpersuasive. *Id.* The position of Sergeant is really analogous to that of a foreman, whose supervision of a small group of workers would not constitute a managerial position within a corporation. *Id.* Moreover, a Sergeant performs all work "in accordance with departmental rules and regulations" and receives instructions regarding assignments and procedures from a superior officer. *Id.*

■ The question now arises as to whether the court should impose any guidelines on the interviewers. We acknowledge the importance to the plaintiffs of being able to obtain informal discovery in support of their lawsuit. We also recognize the need to give some protection to those to be interviewed. While police officers are undoubtedly more sophisticated about the legal process than most laypersons, we believe the following guidelines provide the proper balance. Plaintiffs' counsel before conducting any interview shall advise the interviewee of:

(1) counsel's representative capacity;

(2) counsel's reasons for seeking the interview;

(3) the interviewee's right to refuse to be interviewed; and

(4) the interviewee's right to have his or her own counsel present.

*Univ. Patents, Inc. v. Kligman,* 737 F.Supp. 325, 328 (E.D.Pa.1990) (citing *Lizotte v. NYCHHC,* 1990 WL 267421, 1990 U.S.Dist. LEXIS 2747 (S.D.N.Y.1990); *Siguel v. Trustees of Tufts College,* 1990 WL 29199, 1990 U.S.Dist. LEXIS 2775 (D.Mass.1990).

Accordingly, the court will grant in part and deny in part the motion of the City for a protective order.

## ORDER

AND NOW, this 15th day of September, 1995, it is hereby ORDERED that defendant's motion for protective order precluding plaintiffs' counsel from ex parte communications with current employees or members of the Philadelphia Police Department is GRANTED in part and DENIED in part. Specifically, it is ORDERED that:

1. Plaintiffs' counsel and their agents are precluded from ex parte communications with any current employee or member of the Philadelphia Police Department having managerial responsibility: namely, any Police Lieutenant, Police Captain, Police Staff Inspector, Police Inspector, Chief Police Inspector, Deputy Police Commissioner, and Police Commissioner.

2. Plaintiffs' counsel and their agents are permitted to interview, without prior notice to or consent from defendants' counsel, current members or employees of the Philadelphia Police Department who fall below the rank of Police Lieutenant.

3. Plaintiffs' counsel and their agents, in advance of any interview, shall advise any employee or member of the Philadelphia Police Department of: (a) counsel's representative capacity; (b) counsel's reasons for seeking the interview; (c) interviewee's right to refuse to be interviewed; and (d) the interviewee's right to have his or her own counsel present.