**Claire M. MICHAELS, Plaintiff,**

v.

**Mark WOODLAND, M.D., Fertility & Gynecology Associates, P.C., Pennsylvania Hospital, John Does 1–5, and ABC Corp. 1–3, Defendants.**

**No. CIV. 97–1327.**

United States District Court,
D. New Jersey.

Dec. 12, 1997.

---

Dennis P. Blake, Brown & Connery, Westmont, NJ, for Plaintiff.

Dominic A. DeLaurentis, Jr., Post & Schell, PC, Voorhees, NJ, Joel B. Korin, George & Korin, Woodbury, NJ, for Defendants.

## OPINION

ROSEN, United States Magistrate Judge.

### I. Introduction

Presently before the court is the motion of the plaintiff, Claire M. Michaels, for leave to contact employees and/or former employees of the defendant, Pennsylvania Hospital, *ex parte* pursuant to New Jersey Rule of Professional Conduct (hereinafter "RPC") 4.2. After careful consideration of the submissions of the parties, and for the reasons noted herein, the plaintiff's motion is *GRANTED.*

### II. Background

Plaintiff, Claire M. Michaels, filed this medical malpractice action against the defendants, Mark B. Woodland, M.D., Pennsylvania Hospital and Fertility and Gynecology Associates on March 6, 1997. Plaintiff's Motion at 1 (hereinafter "Motion"). The plaintiff alleges that she was admitted by Dr. Woodland to Pennsylvania Hospital to undergo a "procedure to relieve urinary inconti-

nence called a Birch[1] procedure." Motion at 2. After the procedure, the plaintiff alleges that she became very ill and suffered a number of complications. Motion at 2. According to the plaintiff, those complications resulted in emergency surgery where it was determined that the "plaintiff had suffered a nicked, lacerated, cut and/or otherwise injured bowel and diagnosed an entercutaneous fistula, multiple, severe abdominal abscesses, and freely spilling bowel contents." Motion at 2–3. Plaintiff asserts that Dr. Woodland was negligent in performing the initial procedure, as well as during his post-operative care of the plaintiff. Motion at 3.

In pursuing her claim of negligent post-operative care, the plaintiff seeks, to conduct *ex parte* interviews of those persons, specifically those nurses and nurses assistants, who participated in her post-operative care. Motion at 3. These persons were identified in the defendants' responses to interrogatories and in documents produced by the defendants. Motion at 3, 4 n. 2. The plaintiff claims that these persons have relevant knowledge regarding her condition between the first and second surgery. Motion at 3–4. None of these persons are named parties to this lawsuit. The defendants' urge that such *ex parte* contact is inappropriate and violates RPC 4.2 since the Hospital has offered representation to all of these persons. Opposition at 4–5. Therefore, the defendants claim that all of the persons are represented within the meaning of RPC 4.2 and any *ex parte* contact is prohibited.

### III. Legal Analysis and Discussion

■ The plaintiff relies on RPC 4.2 and 1.13 in support of this motion. Pursuant to the Local Rules of the United States District Court for the District of New Jersey (hereinafter, "Local Rules"), New Jersey law and the Rules of Professional Conduct, as revised by the New Jersey Supreme Court, shall govern the resolution of this dispute. Local Rule 103.1. It is " 'clear ·that the ethical rules and constraints imposed on federal practitioners in New Jersey are the same as those imposed on New Jersey attorneys generally by the state Supreme Court under

New Jersey Court Rule 1.14.' " *Steel v. General Motors Corp.*, 912 F.Supp. 724, 732 (D.N.J.1995)(quoting Allyn Z. Lite, New Jersey Federal Practice Rules 34 (1995 ed.)). Accordingly, the federal courts are counseled by the interpretation given to the RPC by the New Jersey state courts, although federal law may allow or mandate certain adaptations. *Steel*, 912 F.Supp. at 732. In addition, the federal courts must be mindful of the policy of New Jersey to maintain "strict compliance with its RPC." *Id.* (footnote omitted).

The ethical rules governing the within motion have recently been amended. A Special Committee was established by the Supreme Court in *In re Opinion 668 Of the Advisory Committee On Professional Ethics*, 134 N.J. 294, 633 A.2d 959 (1993). The Committee's Report was published on March 20, 1995, *Report of Special Committee on RPC 4.2*, 139 N.J.L.J. 1161 (1995) (hereinafter "Committee Report"), and RPC 1.13, 4.2 and 4.3 were amended effective September 1, 1996 by Order of the Supreme Court dated June 28, 1996. The amendments reflected the recommendations made by the Committee.

■ Before analyzing the substance of the Rules governing *ex parte* contact with witnesses, it is necessary to review the policy considerations behind RPC 4.2. "The Rule aims at preserving the integrity of the attorney-client relationship and 'the posture of the parties within the adversarial system.' Principally, the Rule seeks to protect the lay person who may be prone to manipulation by opposing counsel." *Goff v. Wheaton Industries*, 145 F.R.D. 351, 354 (D.N.J.1992) (citations omitted).

The court is unaware of any reported decisions in New Jersey interpreting the amended Rules. "Until such time [as the New Jersey Supreme Court speaks on the application of the Rules], federal courts in this district are permitted to reach their own conclusions on the scope and application of the Rule[s]." *Id.* at 353. However, because the Supreme Court has adopted the amendments recommended by the Committee in its Report, this court shall look to that Report

---

**1.** The correct spelling of this procedure is "Burch".

as guidance in its interpretation of those amendments. *See In re Prudential Insurance Company of America Sales Practices Litigation*, 911 F.Supp. 148, 152 n. 4 (1995)(declining to rely on the report of the special Committee since the New Jersey Supreme Court had not yet acted upon such report).

The Committee Report indicates that it considered the definition of "which people associated with a organization are considered parties by *RPC* 4.2 ... critical in determining the scope of the rule's prohibition of *ex parte* contact." *Committee Report*, 139 N.J.L.J. at 1194. The Committee then reviewed the approaches adopted by other jurisdictions, including an absolute ban on *ex parte* contact, use of the "facts and circumstances" test, use of the "control group" test, use of the "managing speaking agent" test, and use of the "alter-ego" test. *Id.* at 1194–95. After undertaking this review, the Committee made several recommendations. The main focus of these recommendations was to clarify and determine which employees or former employees were considered "represented" under RPC 4.2. *See id.* at 1195–96.

The Committee recommended that *ex parte* contact be prohibited only with those who are part of the litigation control group, defined as: "current and former [2] agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter; whether or not in litigation.... Significant involvement requires involvement greater than

merely supplying factual information regarding the matter in question." *Id.* at 1195. A distinction was made between those employees who were involved in the subject matter of the litigation and those employees who were involved in the legal decisions regarding the matter. *Id.* The Committee found that defining representation in terms of subject matter "would simply include too many people who, as a practical matter, could not reasonably be considered as represented by the organization's counsel and whose interests are most likely not only not congruent with the organization's but also, in many cases, in conflict with it ." *Id.* at 1195–96.

The Committee expounded upon its decision that fact witnesses are not considered to be within the litigation control group.

> The Committee's definition also envisions that a so-called fact witness should not be assumed to be an agent or employee to whom a communication bar would automatically apply. Only in those situations where the fact witness would also be significantly involved, in ways other than just supplying information, in determining the organization's legal position would the bar apply. This is consistent with the Committee's decision that status of the agent or employee is not as important as role in determining the organization's legal position.

*Id.* at 1196.

■■ A review of RPC 4.2 and 1.13 [3] causes the court to reach the following con-

---

**2.** The word "former" was ultimately not included in the amendments that were adopted by the Supreme Court. *See* RPC 1.13.

**3.** The relevant provisions, as amended, read as follows:

RPC 4.2 COMMUNICATION WITH PERSON REPRESENTED BY COUNSEL

> In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows, or by the exercise of reasonable diligence should know, to be represented by another lawyer in the matter, including members of an organization's litigation control group as defined by RPC 1.13, unless the lawyer has the consent of the other lawyer, or is authorized by law to do so, or unless the sole purpose of the communication is to ascertain whether the person is in fact represented.

RPC 1.13 ORGANIZATION AS THE CLIENT

> (a) ... For the purposes of RPC 4.2 and 4.3, however, the organization's lawyer shall be deemed to represent not only the organizational entity but also the members of its litigation control group. Members of the litigation control group shall be deemed to include current agents and employees responsible for, or significantly involved in, the determination of the organization's legal position in the matter whether or not in litigation, provided, however, that "significant involvement" requires involvement greater, and other than, the supplying of factual information or data respecting the matter. Former agents and employees who were members of the litigation control group shall presumptively be deemed to be represented in the matter by the organization's lawyer but may at any time disavow said representation.

clusions regarding *ex parte* interviews of current and former employees of an organization. The first determination must be whether the witness is a current or former employee.[4] If the witness is a current employee, in order to determine whether *ex parte* contact is prohibited it is necessary to analyze two elements: (1) whether the person is within the litigation control group as defined by RPC 1.13; and (2) if not, whether the person has obtained other representation. RPC 4.2. Clearly RPC 4.2 prohibits an adverse attorney to have any *ex parte* contact with any current employee within the litigation control group. However, if the current employee is not within the litigation control group and has not obtained other representation, *ex parte* contact is permitted consistent with RPC 4.3. If it is a former employee that the lawyer wants to interview, and that person was within the litigation control group, the witness is presumptively represented by the organization. RPC 1.13. However, the lawyer, pursuant to RPC 4.2, may interview any witness who has disavowed that representation. *Id.* Nothing in the Rules prohibits *ex parte* communications with a former employee who was not within the litigation control group and who is not otherwise represented by counsel.

■ Turning to the case at bar, it seems clear that the nurses and nurses assistants that the plaintiff has requested to interview are not within the litigation control group. They are not parties to this action and there is no indication that these persons have any significant input into the legal decisions of the defendants. Rather, these witnesses appear to be merely fact witnesses. They are the persons who cared for the plaintiff during her hospital stay and who may have factual information regarding their observations of the plaintiff's condition while she was in the hospital. The defendants do not dispute that these persons are fact witnesses and have provided no evidence for this court to determine otherwise. Further, it seems that these witnesses were of the type specifically excluded by the Committee when it declined to define the litigation control group in terms of the subject matter of the controversy. *See Committee Report*, 139 N.J.L.J. at 1195. Consequently, the court finds that these witnesses are involved only in the subject of the litigation and are not at all involved in determining legal strategy.

■ However, it is the defendants contention that these witnesses cannot be interviewed because the Hospital has offered representation to them. Opposition at 4–5. The defendants have not provided the court with any case law or other support for the proposition that a member of an organization who, although not within the litigation control group, is offered representation by that organization is actually represented by counsel. Further, the defendants' assertion ignores the fact that such "automatic representation" has been disavowed by at least three courts.[5]

In *Carter–Herman v. City of Philadelphia*, 897 F.Supp. 899 (E.D.Pa.1995), two police officers brought suit against the city for sexual harassment and retaliation. *Id.* at 901. During discovery, counsel for the plaintiffs made known his intention to communicate *ex parte* with various non-party witnesses who were members of the police department. *Id.* The City objected on the basis that such interviews were impermissible under Rule 4.2, as adopted by the Supreme Court of Pennsylvania. *Id.*

Similar to this case, the court noted that "[n]either the Pennsylvania Supreme Court nor Court of Appeals for the Third Circuit has spoken on the application of Rule 4.2 to ex parte communications with current em-

---

**4.** The court is uninformed as to the employment status of these potential witnesses. However, the defendants have advised that they have not yet determined the witnesses employment status, but will provide such information when it is compiled. Nevertheless, because these witnesses are not within the litigation control group, knowledge of their status as current or former employees is unnecessary to complete this analysis as the result is the same.

**5.** Clearly RPC 4.2 contemplates automatic representation for those within the litigation control group. *See also* RPC 1.13(a) (former employees who were within the litigation control group are presumed to be represented by the organization's attorney unless such representation is disavowed). This opinion should not be construed to detract from that application of these Rules and only addresses situations where the witnesses at issue are not within the litigation control group.

ployees of a represented party." *Id* . The defendants claimed that *ex parte* interviews of any employees, regardless of whether they were named parties, would constitute an ethical violation. *Id.* at 902. After considering the arguments put forth by the parties, the court struck a balance.

> We do not accept the notion that every city employee is automatically a represented party simply by virtue of his or her employment without any initiative on the part of the employee to obtain legal help from the City. Otherwise an organization could thwart the purpose of Rule 4.2 simply by unilaterally pronouncing its representation of all its employees. On the other hand, ... we cannot permit communications which violate the intent of Rule 4.2.

*Id.* at 903. The court then concluded that the plaintiffs were permitted to interview any current employees who "do not have 'managerial responsibility,[6]'" as those contacts would not violate RPC 4.2. *Id.*

*Brown v. St. Joseph County,* 148 F.R.D. 246 (N.D.Ind.1993) is another case that has rejected an organization's assertion of automatic, presumptive representation of all employees. In that case, the plaintiff filed a civil rights action against St. Joseph County, various other public agencies and employees, and Memorial Hospital (the hospital which was under contract with the county to treat jail inmates), alleging that those parties had failed to provide him with adequate medical care. *Id.* at 247. The plaintiff sought permission to have *ex parte* contact with former and current employees of the hospital where he received treatment. *Id.* at 247–48.

The court initially denied the plaintiff's request based on the hospital's representation that all former and current employees were represented by counsel. *Id.* at 250. However, the court subsequently reconsidered and reversed its decision on this issue.

The court found that an organization cannot unilaterally impose representation on current or former employees who have not agreed to that representation. *Id.* The court concluded that "Memorial has failed to demonstrate that any of its past or present employees are 'represented by counsel' within the meaning of Rule 4.2 [7] ...." *Id.* at 251 (footnote added) (citations omitted).

This issue was again addressed in *Terra International, Inc. v. Mississippi Chemical Corporation,* 913 F.Supp. 1306 (N.D.Iowa 1996). That case arose from an explosion of a fertilizer plant, after which the operator of the plant sued the "inventor, designer, and licensor of the ammonium nitrate neutralizer technology that allegedly precipitated the explosion." *Id.* at 1308. The motion came before the court following a disagreement over whether the defendant was permitted to conduct *ex parte* interviews of certain employees of the plaintiff. *Id.*

Initially the plaintiff asserted that it represented all of its current employees, although the plaintiff retracted that position during oral argument. *Id.* at 1316–17. Regardless, the court relied on the decisions in *Carter–Herman,* 897 F.Supp. 899, and *Brown v. St. Joseph County,* 148 F.R.D. 246, and declined to support the notion of "automatic representation." *Id.* at 1317.

> This court agrees with these rejections of "automatic representation" of all employees, and will not assume that all employees of Terra are represented by Terra's counsel unless they fall within a category of employees who may reasonably be held to be automatically represented or have specifically agreed to be represented by Terra's counsel. The Carter–Herman and Brown decisions are correct that an employer cannot unilaterally create or impose representation of employees by corporate

---

6. The comments to Pennsylvania RPC 4.2 prohibited *ex parte* contact with those having managerial responsibility, those whose actions could impute liability to the organization and those statements may constitute an admission on the part of the organization. *Id.* at 901–02. The other two categories delineated in the comment were not addressed by the court as they were not at issue. *Id.* at 903.

7. The court interpreted Indiana RPC 4.2 to encompass those current employees who have managerial responsibility, whose acts or omissions may impute liability to the organization or whose statement may constitute an admission on the part of the organization. *Id.* at 254. The court declined to apply RPC 4.2 to former employees who no longer had any connection with the organization. *Id.* at 253.

counsel. Such an "automatic representation" rule would serve no useful purpose, but would instead impede the course of investigation leading to or following the filing of a lawsuit.

*Id.*

This court finds the reasoning of the cases cited above persuasive and dispositive of this issue. An organization should not be permitted to impose representation on employees who do not fall within the litigation control group without the consent of those employees. If this court accepted the defendants' argument, the litigation control group could potentially be abrogated whenever an organization "offered" representation to all employees, including those outside of the litigation control group. This result was clearly not intended by the amendments, especially when the Committee was so careful to narrowly define the litigation control group. This determination adequately protects attorney-client communications within the organization by disallowing *ex parte* contact with any employee who is involved in legal decision-making while at the same time giving effect to the intent of RPC 4.2 not to limit *ex parte* contact with all employees. Further, it protects any lay employees who are within the litigation control group from manipulation by opposing counsel.

Consequently, the fact that the Hospital has offered representation to these witnesses is of no consequence and does not bar *ex parte* communications with them. The court is unwilling to accept the position advocated by the defendants that an offer of representation is equivalent to actual representation. Absent any evidence that these potential witnesses have accepted the defendants' offer of representation, the court shall not blindly assume that they are actually represented. To that end, the plaintiff is permitted to conduct *ex parte* interviews of these witnesses since it has already been determined that they are not part of the litigation control group.

Further, the court questions whether such witnesses would even be entitled to representation under RPC 1.13. The language of the Rule 1.13(e)[8] requires a determination that the dual representation will not result in a conflict of interest contrary to RPC 1.7. The defendants have not done so and have not provided the court with any information that would indicate whether dual representation of the defendants and these potential witnesses would constitute a conflict of interest. For example, if these witnesses provide information supportive of the plaintiff's position, serious questions may arise regarding the ability of counsel for the defendants to ethically represent the defendants and at the same time represent witnesses who may be testifying against the defendants.

In conclusion, the plaintiff is permitted to communicate *ex parte* with the nurses and nurses assistants identified in the plaintiff's motion. However, the plaintiff's counsel must conduct any *ex parte* interview of these witnesses in accordance with RPC 4.3.[9] Further, the plaintiff's counsel should advise the witnesses that they have the right to refuse the interview. Finally, if the witness indicates that they are represented by independent counsel or that they wish to accept the organization's offer of representation, counsel must immediately conclude the interview.

---

8. RPC 1.13(e) reads, in pertinent part, as follows:

   A lawyer representing an organization may also represent any of its directors, officers, employees, members, shareholders or other constituents, subject to the provisions of RPC 1.7.

9. RPC 4.3 DEALING WITH UNREPRESENTED PERSON; EMPLOYEE OF ORGANIZATION

   In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in the matter, the lawyer shall make reasonable efforts to correct the misunderstanding. If the person is a director, officer, employee, member, shareholder or other constituent of an organization concerned with the subject of the lawyer's representation but not a person defined by RPC 1.13(a), the lawyer shall also ascertain by reasonable diligence whether the person is actually represented by the organization's attorney pursuant to RPC 1.13(e) or who has a right to such representation on request, and, if the person is not so represented or entitled to representation, the lawyer shall make known to the person that insofar as the lawyer understands, the person is not being represented by the organization's attorney.

### IV. Conclusion

For the foregoing reasons, the plaintiff is permitted to conduct *ex parte* interviews of the fact witnesses identified in the within motion.